**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**James Charles PINGLETON,
Defendant-Appellant.**

**No. 71–1289.**

United States Court of Appeals,
Seventh Circuit.

March 24, 1972.

Rehearing Denied May 1, 1972.

Julius L. Sherwin, Thedore R. Sherwin, Chicago, Ill., for defendant-appellant.

James R. Thompson, U. S. Atty., Farrel J. Griffin, Asst. U. S. Atty., William J. Bauer, U. S. Atty., Chicago, Ill., for plaintiff-appellee; John Peter Lulinski, Jeffrey Cole, Asst. U. S. Attys., of counsel, Roger Klaus, Legal Intern.

Before HASTINGS, Senior Circuit Judge, KILEY, Circuit Judge, and GORDON,* District Judge.

* District Judge Gordon of the Eastern District of Wisconsin is sitting by designation.

HASTINGS, Senior Circuit Judge.

Defendant James Charles Pingleton was indicted by a federal grand jury on two counts for the unlawful sale and possession of a Colt M–16 machine gun, on or about April 17, 1969, in violation of Title 26, U.S.C.A. §§ 5861(e) and (d),[1] respectively. A jury found defendant guilty on both counts. Following denial of post trial motions, a judgment of conviction was entered. Defendant was ordered committed for two years, and in addition to pay a fine of $1,000 and costs; execution of the sentence was suspended; defendant was ordered placed on probation for three years, with a provision that he be incarcerated for the first 30 days thereof. Defendant appeals. We affirm.

The issues raised on appeal relate to the claim of entrapment; the alleged improper cross-examination by the prosecutor of defendant's character witnesses; and the prosecutor's alleged inflammatory remarks in closing argument to the jury.

Considering the evidence in the light most favorable to the Government, as we are required to do, the jury, being the judge of the credibility of the witnesses and the weight to be assigned to the evidence, could reasonably have found the following narrative statement of the relevant facts to be true.

Defendant first became a federally licensed firearms dealer in March, 1966 and conducted his business from his residence in a Chicago suburb, in addition to other regular employment. Emilio Gaspari was a fellow firearms dealer and had known defendant since 1965. Kenneth Borcia, a special investigator for the federal Alcohol, Tobacco and Firearms Division, was at the Chicago residence of Gaspari in the early part of April, 1969. While there, Gaspari telephoned defendant and they had a conversation concerning the possible sale of fifteen machine guns.

On the evening of April 17, 1969, Agent Borcia and Gaspari called on defendant at his home. A conversation took place in which defendant said to Agent Borcia, "You are lucky you didn't bite for the fifteen machine guns that I told Gaspari about that I had for sale." In answer to Borcia's question, defendant further said, "Well, if you had wanted all fifteen of them at once, I would have expected you to have been a federal agent and I never would have had you down tonight."

Defendant then told Borcia he could not obtain a Browning automatic rifle for him but that he could get him a M–16 machine gun for $475. Defendant left the room to make a telephone call to check on the availability of the M–16. He returned shortly and advised Borcia he could get the gun but that Borcia would have to buy it from him (defendant) because the owner did not know Borcia and therefore did not trust him. Upon the defendant's suggestion, Borcia and Gaspari went out to a restaurant to eat. When they returned, defendant had possession of the M–16. Borcia had only $290 with him. He borrowed $100 from Gaspari and paid the $390 to defendant, promising to pay the remaining $85. Defendant said at that time he knew the gun was stolen. Later that evening Agent Borcia, accompanied by Gaspari, left defendant's home with the M–16.

A week later, on April 24, 1969, Agent Borcia returned to defendant's home in the evening and paid the balance of $85 on the purchase price of the M–16. On May 6, 1969, Borcia was again in defendant's home to purchase ammunition. On September 17, 1969, Borcia was in defendant's home, purchased a shotgun and pistol from defendant and had din-

1. Section 5861(e) makes it unlawful to transfer a firearm without the prior approval of the Secretary of the Treasury or his delegate, as required by Title 26, U.S.C.A. § 5812. Section 5861(d) makes it unlawful to receive or possess a firearm which is not registered to defendant in the National Firearms Registration and Transfer Record, as required by Title 26, U.S.C.A. § 5842.

ner with defendant and his wife at their residence. During these several meetings with defendant, Borcia, in order to deceive defendant, misrepresented that he liked to hunt and fish; that his parents owned several restaurants; and in general left the impression that he was an unemployed "playboy."

Defendant testified in his own behalf and, as corroborated by his wife, stated that Agent Borcia met with him at his home three times *before* April 17, 1969. Cook County Sheriff's patrolman Richert corroborated their testimony that their first meeting was sometime in January, 1969. Agent Borcia testified, however, that Richert was present at Borcia's first meeting with defendant, but asserted that it was in fact on April 17, 1969 and that he had never spoken to defendant before that date.

Defendant and his wife testified they had served dinner to Agent Borcia in their home sometime in February, 1969, while Borcia said it was on September 17, 1969, five months after the transfer and possession of the M–16 on April 17, 1969. Borcia had made notes relating to the occurrences going back to April 17, 1969, which he later destroyed after making a written report concerning such matters about one year later.

Defendant was introduced to Agent Borcia by Gaspari. He sought to impeach Gaspari because the latter was then under an indictment in Detroit, Michigan for conspiracy to violate a federal statute.

Thus, it appears conclusively that the testimony of Agent Borcia and defendant was in conflict principally concerning the time of the various occurrences. The jury, in its allowable discretion, obviously believed Agent Borcia, rather than defendant and his witnesses.

Defendant was arrested in May, 1970 for the unlawful possession and transfer of the M–16 machine gun purchased on April 17, 1969. The instant indictment was returned in July, 1970.

## I

Defendant first charges that the trial court erred in denying defendant's motion for a judgment of acquittal on the ground of entrapment as a matter of law.

The basic law governing entrapment stems from Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932) and Sherman v. United States, 356 U.S. 369, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958). Both have been considered and cited by our court and all other circuits so many times it hardly seems necessary to burden this opinion with another such dissertation.

It should be sufficient to say that the defense of entrapment is a jury issue, United States v. Lauchli, 7 Cir., 371 F.2d 303, 307–308 (1966). In resolving conflicting evidence on review of a conviction, we recognize that it is the proper function of the jury to weigh the evidence and determine the credibility of the witnesses. United States v. Carter, 7 Cir., 326 F.2d 351, 352–353 (1963). The Government may properly use decoys and undercover agents and may conceal the identity of its agents. Lewis v. United States, 385 U.S. 206, 209, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966). Entrapment is not established as a matter of law unless it is patently clear from the undisputed evidence that government agents originated the criminal design and implanted in the mind of an innocent person the disposition to commit the crime. United States v. Haden, 7 Cir., 397 F.2d 460, 466 (1968), cert. denied 396 U.S. 1027, 90 S.Ct. 574, 24 L.Ed.2d 523 (1970). In the instant case, as in *Haden*, where conflicting evidence must be resolved to determine the defense of entrapment, we are bound by the credibility determination made by the jury.

In light of the facts as the jury could reasonably have found them, and on consideration of the law governing the issue of entrapment, we conclude that the de-

fense of entrapment was not established as a matter of law.

■ Defendant tendered an instruction to be submitted to the jury which read in relevant part: "The defense of unlawful entrapment is not established if the defendant *was either engaged in similar crimes,* or was ready and willing to violate the law * * *." (Emphasis added). Over defendant's objection, the trial court gave this instruction, after deleting the phrase, "was either engaged in similar crimes, or." The court omitted this phrase for the reason that the Government offered no evidence of prior similar crimes and did not attempt to do so. The instruction tendered contained an "either/or" clause and the part deleted was merely surplusage. The trial court, in the proper exercise of its discretion, wisely limited the jury to a consideration of the material issues involved. It did not abuse its discretion and defendant was not thereby denied a fair trial.

## II

■ Defendant presented five character witnesses. After establishing a proper foundation for their testimony, each of such witnesses testified in substance that defendant's general reputation for being a peaceable and law abiding citizen in the community where he lived, prior to the date the instant indictment was returned, was good. On cross-examination of three of such witnesses by the Government, one answered he was not aware that defendant had sold a machine gun to someone prior to that date. Two other witnesses answered, over objection, that they were not aware that the community knew defendant had sold a stolen machine gun. Defendant charges prejudicial error in such rulings. We find none.

Having placed his good reputation in issue, the Government had the right to test the sufficiency of the witnesses'

knowledge of any stories that might be circulating concerning the events that had taken place. Further, the cross-examination was carefully limited to the one specific incident, the offense charged in the indictment, an occurrence which then stood uncontroverted.[2] It did not extend into other areas where prejudice may arise. Finding no prejudice to defendant, under this record we hold that the trial court did not abuse its discretion in denying defendant's objections to these two limited questions on cross-examination. Michelson v. United States, 335 U.S. 469, 480–481, 69 S.Ct. 213, 93 L.Ed. 168 (1948); United States v. Pope, 7 Cir., 409 F.2d 371, 374 (1969); United States v. Battaglia, 7 Cir., 394 F.2d 304, 317 (1968), vacated and remanded sub. nom., 394 U.S. 310, 89 S.Ct. 1163, 22 L.Ed.2d 297 (1969); United States v. Wolfson, 2 Cir., 405 F. 2d 779, 786 (1968), cert. denied, 394 U. S. 946, 89 S.Ct. 1275, 22 L.Ed.2d 479 (1969).

## III

Defendant charges that two remarks made by the prosecuting attorney in closing argument to the jury were grossly inflammatory and intended to arouse the passions and prejudices of the jury. We have examined these comments objected to. They were quite brief and diverse in content. The trial court, in its discretion, sustained one of the objections and properly instructed the jury to disregard the statement. It denied the other objection. The challenged remarks were so minimal in character that, though perhaps inadvertent, they fall far short of the highly prejudicial character requiring a mistrial or furnishing grounds for a reversal. In this area, "each case must be judged uniquely and in the context of its own peculiar facts." United States v. Garrett, 7 Cir., 424 F.2d 1235, 1236 (1970). The trial court had full opportunity to observe and hear the remarks in the specific

---

2. On the defense of entrapment, which defendant raised, he necessarily admitted his guilt of the possession and sale of the

M–16. As earlier pointed out, the jury could have believed he told Agent Borcia the machine gun was stolen.

context of the trial. And so, as in *Garrett*, "when viewed in that light, we are of the opinion that the prosecutor's remarks were not so prejudicial as to require a new trial."

The judgment of conviction is affirmed.

Affirmed.