The judgment of the district court will be affirmed.

**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Ernest PERRY, Defendant-Appellant.**

**No. 72-1363.**

United States Court of Appeals, Seventh Circuit.

Argued Dec. 7, 1972.

Decided May 18, 1973.

Donald L. Jackson, Indianapolis, Ind., for defendant-appellant.

Stanley B. Miller, U. S. Atty., William F. Thompson, Asst. U. S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Before KNOCH, Senior Circuit Judge and KILEY and CUMMINGS, Circuit Judges.

KNOCH, Senior Circuit Judge.

The defendant-appellant, Ernest Perry, has taken this appeal from his con-

viction in a jury trial on a charge of selling a narcotic drug in violation of Title 26 U.S.C. § 4705(a). He was sentenced to serve a term of 12 years.

The actual sale was described in the testimony of a government informant who said he had known the defendant for about 15 years. Although he testified that he was now feeling well, being no longer addicted to drugs, he admitted to having been a user of narcotics for 8 to 10 years and also a seller of narcotics which he bought from defendant and others.

He testified that early in May 1969, he met William McCurdy who, he later learned, was an agent for the Bureau of Narcotics and Dangerous Drugs, with whom he arranged to purchase narcotics on May 9, 1969.

In the evening of that day, he said he drove to 30th and College Streets in Indianapolis, in a pink 1960 Mercury, and met Agent McCurdy who gave him $300 to buy narcotics, after which he drove, with Agent McCurdy following in another automobile to a point on Evergreen Street close to its interstction with Fall Creek Parkway, where Agent McCurdy parked on signal of the informant. The informant then drove on down Fall Creek Parkway.

Up to this point, William B. McCurdy, who was employed by the United States Bureau of Narcotics at the time in question, was able to corroborate the informant's testimony. He described the informant's automobile as "beige."

The informant said he entered the driveway of defendant's home on Fall Creek Parkway and at his knock was admitted by the defendant himself. He said he had had no drugs on his person at that time, that he had had a "fix" within six hours and was experiencing none of the sickness attendant on failure to secure his accustomed dose of narcotics.

Captain Richard A. Jones, of the Indianapolis Police Department's narcotics section, testified that he had known the defendant for about 10 to 12 years, that he was maintaining surveillance on defendant's house with binoculars and saw the informant, whom he also knew, approaching in a beige 1960 Mercury. He gave the license plate number. He saw the informant admitted to the house by the defendant.

Special Agent Paul J. Markonni, of the United States Secret Service, who was employed by the United States Bureau of Narcotics at the time, followed Agent McCurdy and was able to corroborate the prior testimony about the meeting and was later present near defendant's house to observe the informant's entry.

The informant testified further that for $150 he bought cocaine from defendant who got it from a jar on the second floor of the house and put it into a tinfoil packet. He said the transaction took about 15 minutes and he returned to Agent McCurdy to whom he gave the cocaine, after taking out $\frac{1}{25}$th of the quantity, which he subsequently used.

Captain Jones saw the informant leaving the house and saw the defendant in the doorway shutting the door. He watched the informant drive away in his car down Fall Creek Parkway.

Agent McCurdy testified that the informant came back to him in about 15 or 20 minutes after they had parted and delivered an aluminum foil package containing white powder. Agent Markonni observed that meeting.

All of the agents referred to a woman companion of the informant who remained in his automobile the whole time. She also testified to the same effect, indicating that she had shared in the portion of the cocaine retained by the informant and that it was cocaine.

The defense introduced evidence of the tall evergreens near the doorway of the defendant's residence and two of defendant's employees testified, one that he was not at home at the time of the alleged sale and the other that he was in his place of business all that evening.

On the testimony briefly summarized above, we find no basis for submitting

the issue of entrapment to the jury. The defense makes much of the fact that the informant was himself an addict, that it was several hours since his last use of drugs, with the inference that his possible suffering of withdrawal symptoms may have moved defendant by pity to commit an offense for which he was not apt and willing.

■ Mere solicitation is not enough to show entrapment. United States v. DeVore, 4 Cir., 1970, 423 F.2d 1069, 1071, cert. den. 402 U.S. 950, 91 S.Ct. 1604, 29 L.Ed.2d 119; Kadis v. United States, 1 Cir., 1967, 373 F.2d 370, 374; Lopez v. United States, 1963, 373 U.S. 427, 436, 88 S.Ct. 1381, 10 L.Ed.2d 462; United States v. Markham, 7 Cir., 1951, 191 F.2d 936, 938, cited with approval in United States v. Smith, 7 Cir., 1972, 467 F.2d 1126; United States v. Perkins, 7 Cir., 1951, 190 F.2d 49. In *DeVore* (423 F.2d p. 1072) and *Lopez* (373 U.S. p. 436, 88 S.Ct. 1381) solicitation was held to be insufficient to require an instruction on entrapment.

There was evidence which, if credited by the jury, would negative any undue appeals to defendant's sympathy. The informant said he was in no distress and he was in the defendant's house for a very short period of time. The drug was already in the defendant's possession in quantity. He did not go elsewhere to procure it especially for the informant.

■ There was nothing to show that government agents implanted the disposition to commit this offense in the mind of an innocent defendant as required to establish entrapment. United States v. Haden, 7 Cir., 1968, 397 F.2d 460, 466, cert den. 396 U.S. 1027, 90 S. Ct. 574, 24 L.Ed.2d 523, cited with approval in United States v. Pingleton, 7 Cir., 1972, 458 F.2d 722, 724. This was a far cry from the circumstances in United States v. McGrath, 7 Cir., 1972, 468 F.2d 1027, 1030, where law enforcement officers manufactured and delivered the counterfeit bills for possession of which the recipient was arrested.

However, early in the course of the trial the possibility that defendant might argue entrapment on the ground that the sale was made to an informant who was himself a drug addict was discussed out of the presence of the jury, and, although there were some contradictory statements, it is apparent that defense counsel's final decision was that while defendant would not testify, or offer witnesses to state, that he had made the sale but only because he was improperly induced to do so, counsel would argue such inferences of entrapment as might be drawn from the government's evidence and would invite the jury's attention to them. The District Judge, of course, had at that time no way of knowing what might be disclosed by the testimony.

Accordingly the Court allowed the government to show predisposition on the part of defendant to commit this offense and reasonable grounds for the police officers' having entertained a belief in defendant's predisposition to the extent of offering the defendant an opportunity to commit the offense if he were willing to do so.

As it happened, the evidence was such as not to require jury determination of the issue of entrapment. The Trial Judge, however, did instruct the jury on that point and cautioned the jurors that evidence of prior unlawful conduct could be considered only when, and if, the jury had already found, beyond a reasonable doubt, from other evidence standing alone that the defendant did the act charged in the indictment, and then only to determine his state of mind to ascertain whether he had been unlawfully entrapped or whether he had a predisposition unlawfully to traffic in narcotics and knowingly and willfully did the act. For a recent pronouncement of this Court on entrapment see United States v. Cardi, 7 Cir., 1973, 478 F.2d 1362, pp. 1367.

To a considerable degree the same evidence was used to prove both aspects of predisposition and reasonable grounds. On the issue of predisposition, any per-

tinent fact, whether known to the authorities at the time of the offense or discovered later would be relevant. To prove reasonable grounds, however, only facts known to the authorities or beliefs held prior to the commission of the offense would be relevant.

Defendant contends that the prosecution's failure, tacitly permitted by the Trial Court, to distinguish between evidence offered for one or the other purpose worked a hardship on him because the jury might have assumed, for example, that mere hearsay of defendant's having trafficked in drugs was sufficient to prove his actual predisposition. Thus the defendant argues that the two types of evidence must be carefully distinguished and evidence to show predisposition should be limited to a showing of prior convictions. He cites United States v. White, 6 Cir., 1968, 390 F.2d 405, where the Court held it was error to admit testimony of an arrest without prosecution or conviction some eight years before, where the defendants took the stand and testified that they had been tricked into believing that they were merely to deliver spurious narcotics in a purported scheme of retaliation against a cheating burglar. At one point defendant asserts that he never contended that the officers were without reasonable grounds, although that was not evidently made apparent and the line of some of the cross-examination would support a contrary conclusion. The Circuits are not in agreement on these two types of evidence, as the government points out.

Heath v. United States, 10 Cir., 1948, 169 F.2d 1007, 1010, imposes on the government the burden of proving that its agents had reasonable grounds to believe that the defendant was predisposed to commit the offense, but allows proof by hearsay testimony. United States v. DeVore, 4 Cir., 1970, 423 F.2d 1069, which rejects that rule, cites a number of Tenth Circuit cases to the same effect as *Heath*. Kadis v. United States, 1 Cir., 1967, 373 F.2d 370, 374, cited with approval in *DeVore*, summarized the

various Circuit rules and found unreasonable the distinction between inducement, predisposition and reasonable grounds, reducing the issue to one: has the defendant shown, by government witnesses or otherwise, some indication that a government agent corrupted him, in which case, the government must disprove entrapment, but evidence of solicitation is not sufficient. There must be some evidence of unreadiness on the part of the defendant.

In showing predisposition, evidence was adduced of a sale by this defendant to the same informant on the day before the sale charged in the indictment, as well as on other occasions. Witnesses disclosed various items of information made available to them to explain the actions they had taken. For example, Captain Jones explained why he was maintaining surveillance on defendant's home and what he observed while so engaged. Among other things, he referred to seeing persons whom he had arrested in the past for drug violations who entered and left the defendant's home while he was watching at various times of the day and night during the month of April 1969.

The defendant repeatedly stresses a statement by Agent Bottorff who testified about planning the surveillance and who said that the agents knew that they "were trying to purchase narcotics; we didn't know where we were going. . . ." He testified further that he knew Agent McCurdy was working in an undercover capacity, investigating the informant and "persons unknown." Defendant interprets this as negativing a later statement that a repeat of the previous day's sale was anticipated. But the agents obviously did know where they expected to go. Captain Jones was present at the site before the informant arrived. Agent Paul J. Markonni, maintaining surveillance in an automobile, drove around the area, managing to come back past the defendant's house just as the informant was being admitted. There was ample evidence to show reasonable ground for offering this defend-

ant an opportunity to commit the offense if he were apt and willing.

■ Defendant complains that some of the evidence adduced was hearsay which he characterizes as inadmissible. However to negative a claim of entrapment, it is permissible to entertain evidence of the defendant's reputation and of the officers' basis for their actions. We are not here dealing with information acquired through uncorroborated anonymous telephone calls or vague references to conversations as in Whiting v. United States, 1 Cir., 1961, 296 F.2d 512, where the Court held that proof of general reputation is admissible to demonstrate predisposition but that it was improper for an officer to attempt to prove that reputation by anonymous callers when he had no idea whether they knew the appellant, were even from his geographical area or had first-hand information; or Waker v. United States, 1 Cir., 1965, 344 F.2d 795, 797, ftn. 5, where the error consisted in failure to instruct respecting hearsay and the Court felt that the error which might not have been considered prejudicial was rendered so by the presence of certain evidence, specifically in that one witness said he conversed with two Coast Guardsmen, with the inference they gave him information about the defendant, where it was never disclosed what, if any, information was received from them; or stale information never followed up as in United States v. Johnston, 7 Cir., 1970, 426 F.2d 112, 113, on which defendant relies.

■ The better practice might be to separate, where possible, the evidence adduced to show predisposition and the evidence offered to show reasonable grounds. In the case before us, however, that would have been difficult. For example, the informant's report (which had been communicated to the agents) of a series of dealings with the defendant (to which the informant testified) served to prove both predisposition and reasonable grounds. We are satisfied that no prejudicial error resulted from the manner in which the evidence to negative entrapment was presented, although, as indicated, we do not see in this record sufficient basis for submitting the issue of entrapment to the jury.

The defendant remarks that it was possible for the informant to have paid a completely innocent visit to the defendant and then to have obtained the narcotics which he later turned over to Agent McCurdy from the woman who accompanied him on his visit but who remained in the automobile while the informant was in the house. The defense also argues that the informant had much to gain by ingratiating himself with the government agents. Emphasis is placed on the sum of money entrusted to him, the portion of narcotics he was allowed to retain and the fact that he was released on his own recognizance although his bond had previously been set at $50,000. The verdict indicates that the jury did determine the issue of credibility by accepting the informant's version of these events.

The defense presented a factual issue concerning defendant's presence in the house at the time of the sale. As indicated, the defense underlined the fact that the defendant could have been seen only very briefly if indeed it was he who opened the door and that observation would have been impeded by the lighting, the relative heights of defendant and the informant and the presence of trees near the door. Again, the jury must have credited the testimony of the informant who said that he did make his purchase from the defendant and the testimony of Captain Jones who identified the defendant as the man he saw at the door admitting the informant.

Defendant also contends that he was deprived of a fair trial by the Court's comments and suggestions. We cannot agree that this was a "close" case as in United States v. Carmel, 7 Cir., 1959, 267 F.2d 345, 346, 350, on which defendant relies, where there was no direct evidence in the record of defendant's knowledge that the automobiles he transported were stolen and the govern-

ment was relying solely on rather slight circumstantial evidence. The Trial Judge's intrusions on the functions of counsel were many and extensive in *Carmel*. Defendant complains that here, for example the Trial Judge "rehabilitated" a witness by asking further questions which resulted in strengthening the testimony adversely to defendant and in another instance suggested that the prosecutor pursue a certain line of inquiry. Our scrutiny of the transcript of the trial, with particular reference to the specific instances to which defendant has invited our attention, satisfies us that the Trial Judge here, as distinguished from the Trial Judge in *Carmel*, did not overstep the bounds of his authority to expedite the trial in the interest of truth and justice by eliciting facts necessary to the clear presentation of the issues. Viewing his questions and comments in context, we find no signs that he failed to preserve an attitude of impartiality or did or said anything which could have misled the jury into believing that he had formed an opinion as to the defendant's innocence or guilt. See United States v. Fry, 7 Cir., 1962, 304 F.2d 296; United States v. Esquer, 7 Cir., 1972, 459 F.2d 431, 435. The judgment of the District Court is affirmed.

Affirmed.