**UNITED STATES of America, Appellee,**

v.

**Cleo JACKSON, Appellant.**

**No. 79–1371.**

United States Court of Appeals,
Eighth Circuit.

Submitted Sept. 14, 1979.

Decided Oct. 31, 1979.

Rehearing and Rehearing En Banc
Denied Nov. 26, 1979.

Deborah Wikstrom, E. J. Ball & Kenneth R. Mourton, Fayetteville, Ark., for appellant.

J. Michael Fitzhugh, Asst. U. S. Atty., Fort Smith, Ark., for appellee; Larry R. McCord, U. S. Atty., Fort Smith, Ark., on brief.

Before STEPHENSON and McMILLIAN, Circuit Judges, and HANSON,* Senior District Judge.

---

* The Honorable William C. Hanson, Senior United States District Judge for the Southern District of Iowa, sitting by designation.

STEPHENSON, Circuit Judge.

Defendant Jackson appeals from a jury conviction on two counts of corruptly endeavoring to influence and impede two petit jurors in violation of 18 U.S.C. § 1503.[1] On appeal he contends that the jury instructions were inadequate, more particularly that the court erred in refusing to give his requested instruction on specific intent; the evidence was insufficient to sustain his conviction; his actions did not fall within the scope of 18 U.S.C. § 1503; the court further erred in instructing that veniremen come within the scope of 18 U.S.C. § 1503; and the district court erred in refusing to grant a continuance to permit the testimony of additional character witnesses unable to be present because of inclement weather. We affirm.

The evidence most favorable to the jury verdict discloses that Shirley Ann Turner and Richard Greer had been selected to be members of the petit jury panel from which jurors were to be drawn for a pending criminal case entitled *United States v. Tilley, et al.* when they were approached by appellant Jackson about the pending case. The *Tilley* case had been scheduled for trial Monday, June 26, 1978. On June 22, 1978, appellant engaged in a conversation with jury panelist Turner at the cafe where she was employed. During the course of this conversation appellant asked Mrs. Turner if she was going to show up in court Monday morning. When Mrs. Turner asked appellant "how he knew that I was even supposed to be there and he [appellant] said 'I have my ways of finding out.'" Appellant then pulled a sheet of paper out of his pocket and started reading names of prospective jurors.

Mrs. Turner asked appellant what the trial was about and he responded, "It is a friend of mine and the federal boys are trying to railroad him." Appellant added, "I am going to tell you one thing to listen for, listen for the word 'harassment' and that is all I am going to say."

---

1. The Honorable Paul X. Williams, Chief Judge, United States District Court for the Western District of Arkansas, presiding, imposed a split sentence of three months imprisonment, one year probation and a $5,000 fine.

The following day Mrs. Turner received a telephone call from a clerk of the court informing her that she had been excused from jury duty because of her poor health. Mrs. Turner told the clerk about the previous day's incident with appellant Jackson. Later the court was informed of the possibility that veniremen had been contacted and dismissed the entire panel of veniremen and directed the clerk to summon a completely new panel and rescheduled the case for trial in July.

Jury panelist Richard Greer was likewise contacted by appellant prior to Tilley's scheduled trial, and after confirming that Greer was on the panel,[2] appellant said "he had a friend who the government had been tormenting or harassing around." Some time later in an interview with two FBI agents appellant stated he told Greer that his friend, a banker at Marshall, was going to be on trial at Harrison and that he had asked Greer to listen for the word "harassment." Appellant also stated that he had told Mrs. Turner that he had a friend coming up for trial and for her to listen for the word "harassment"; further, that he may have made the statement to her that the federal boys are trying to railroad him.

Appellant testified at the trial with reference to his conversations with Mrs. Turner and Mr. Greer. He testified that he told them, "I had a friend coming up in court, listen for the word 'harassment' and vote your convictions."

Initially, appellant contends that the trial court erred in refusing to instruct the jury on the definition of specific intent, as requested by the defendant. The trial court instructed as follows:

> To establish the offense charged in each count of the indictment, the government must prove that Cleo Jackson acted corruptly and with the specific intent of influencing Mrs. Turner and/or Mr. Greer in the discharge of their duties and to influence, obstruct and impede the due administration of justice.
>
> In this case, the word "corruptly" means willfully, knowingly, and with the

specific intent to influence a juror to abrogate his or her legal duties as a petit juror.

> The phrase "obstruct, influence and impede the due administration of justice" includes any endeavor, done corruptly and with the specific intent, to influence a juror to abrogate his or her legal duties as a petit juror.
>
> No crime has been committed when one merely urges a juror to perform his or her legal duties. 18 U.S.C. Sec. 1503 prohibits one from endeavoring to make a juror not perform his legal duties or to do something in violation of the juror's legal duties.
>
> Intent ordinarily may not be proved directly, because there is no way of fathoming or scrutinizing the operations of the human mind. But you may infer the defendant's intent from the surrounding circumstances. You may consider any statement made and act done or omitted by the defendant, and all other facts and circumstances in evidence which indicate his state of mind.
>
> You may consider it reasonable to draw the inference and find that a person intends the natural and probable consequences of acts knowingly done or knowingly omitted. As I have said, it is entirely up to you to decide what facts to find from the evidence.

Appellant particularly contends that the foregoing instruction is inadequate because it fails to define "corruptly" to mean "a defendant acted with improper motive or with bad or evil or wicked purpose"; also, that "willfully" and "specific intent" should have been further defined.

It is well established that a court is not bound to accept the language of a requested instruction, nor to give a proposed requested instruction if the court gives it in substance. *United States v. Nance*, 502 F.2d 615, 619–20 (8th Cir. 1974), *cert. denied*, 420 U.S. 926, 95 S.Ct. 1123, 43 L.Ed.2d 396 (1975). In reviewing the adequacy of jury instructions, the court must consider

---

2. Greer testified, "He [appellant] said 'you are on the petit jury aren't you?' and I said 'yes.' "

the charge as a whole. *United States v. Cartano,* 534 F.2d 788, 793 (8th Cir.), *cert. denied,* 429 U.S. 843, 97 S.Ct. 121, 50 L.Ed.2d 113 (1976). *See also United States v. Johnson,* 585 F.2d 119, 128 (5th Cir. 1978). We are satisfied that the issue of specific intent in the context of this case was properly submitted to the jury and the motion for a new trial was appropriately denied.

■ Appellant next argues that the trial court erred in denying his post-trial motion for judgment of acquittal on the grounds that the evidence was insufficient to support his conviction. The court properly instructed the jury as to the three essential elements that must be found beyond a reasonable doubt to establish defendant's guilt in this case: (1) that the defendant had contacted Shirley Turner and/or Richard Greer who had been selected to serve on the panel from which petit jurors were to be selected in the pending criminal action; (2) that by said contact the defendant endeavored to influence and impede them in the discharge of their duties as members of the jury; and (3) that the defendant's actions were done corruptly. Appellant concedes that the government proved the first two elements but failed to prove that the actions of appellant were done corruptly. He argues that his testimony "I took it on my own to say something in Jim Tilley's behalf to two of the jurors" does not show any specific intent. Furthermore, the circumstantial evidence fails to establish specific intent. His contact with the potential jurors was of a casual nature. He did not threaten or bribe either prospective juror or tell them how to vote. In sum, he argues that there is not sufficient relevant evidence in this case from which a reasonable mind could conclude that appellant acted with specific intent. We disagree.

There was substantial evidence from which the jury could reasonably conclude that appellant willfully, knowingly, and with specific intent sought to influence the named members of the jury panel to abrogate his or her legal duties as a juror. The testimony of Mr. Greer and Mrs. Turner reveals statements made by the defendant which a reasonable person might well conclude were an attempt to influence a juror in the discharge of his or her duties. Since it is a juror's duty to render a verdict based on the evidence presented at the trial, the defendant's description of the government's case against Mr. Tilley as "tormenting," "railroading" and "harassing" can reasonably be seen as an endeavor on the part of defendant to interpose his opinion into matters which were ultimately the sole province of the jury. We are satisfied that the evidence amply supports the jury's essential finding of defendant's specific intent to impede or influence the due administration of justice in this case. *See Leffler v. United States,* 409 F.2d 44, 50–51 (8th Cir. 1969).

■ Appellant contends the trial court erred in denying his motion for judgment of acquittal on the grounds that the actions of the appellant did not fall within the scope of 18 U.S.C. § 1503. Initially, he contends that Mrs. Turner and Mr. Greer were not petit jurors and thus not within the proscription of the statute. It is abundantly clear that a veniremen comes within the proscription of the statute. In *United States v. Russell,* 255 U.S. 138, 41 S.Ct. 260, 65 L.Ed. 553 (1921), the Supreme Court reversed a dismissal of an indictment which charged the defendant with endeavoring to corruptly influence a petit juror "though he was not yet selected or sworn." A venireman is a prospective juror. *United States v. Haldeman,* 181 U.S.App.D.C. 254, 282 n.27, 559 F.2d 31, 59 n.27 (D.C.Cir.1976). Thus, appellant's contention that the trial court erred in instructing the jury that venireman comes within the scope of 18 U.S.C. § 1503 is devoid of merit.

■ It is also clear that the statute makes an offense of any proscribed "endeavor." In *Osborn v. United States,* 385 U.S. 323, 333, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966), the Supreme Court pointed out the significance of the word "endeavor" by quoting from *United States v. Russell, supra:*

"The word of the section is 'endeavor,' and by using it the section got rid of the

technicalities which might be urged as besetting the word 'attempt,' and it describes any effort or essay to do or accomplish the evil purpose that the section was enacted to prevent. . . . The section . . . is not directed at success in corrupting a juror, but at the 'endeavor' to do so. Experimental approaches to the corruption of a juror are the 'endeavor' of the section." *United States v. Russell,* 255 U.S. 138, 143, 41 S.Ct. 260, 261, 65 L.Ed. 553.

In both *Osborn* and *Russell* the endeavor to bribe a prospective juror was made through an intermediary. The juror was not actually contacted. Nevertheless, the Supreme Court held there was an endeavor within the proscription of the statute. Thus, appellant's further claim that any obstruction of the due administration of justice would be limited to intimidating actions is without merit. The gist of the offense is the corrupt endeavor. *See United States v. Cioffi,* 493 F.2d 1111, 1118–19 (2d Cir.), *cert. denied,* 419 U.S. 917, 95 S.Ct. 195, 42 L.Ed.2d 155 (1974). A non-coercive but corrupt attempt to influence is within the conduct proscribed by section 1503. *See United States v. Walasek,* 527 F.2d 676, 679 n.9 (3d Cir. 1975). As indicated in *Russell,* success in the endeavor to corrupt is not essential.

Appellant further contends that the trial court erred in denying his motions for a continuance because five character witnesses who had not been subpoenaed but had planned to testify were unable to travel to the trial because of inclement weather. The trial court, after ascertaining that the absent witnesses were going to testify only as to defendant's character, inquired of the government as to whether it planned to offer any evidence in opposition to reputation evidence already offered by the defense. When the government replied in the negative, the court stated:

> The fact that five character witnesses have testified and the proposed witnesses would testify [only to the defendant's character], and the government plans no opposition testimony, the motion will be overruled.

The granting of a continuance is clearly within the discretion of the trial court. Here it is obvious there was no abuse of discretion in refusing to grant a continuance. *See United States v. Little,* 567 F.2d 346, 348–49 (8th Cir. 1977), *cert. denied,* 435 U.S. 969, 98 S.Ct. 1608, 56 L.Ed.2d 60 (1978).

The conviction is affirmed.