**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**John B. NICOSIA, Defendant–Appellant.**

**No. 79–1918.**

United States Court of Appeals,
Seventh Circuit.

Argued May 5, 1980.

Decided Nov. 25, 1980.

Rehearing and Rehearing En Banc
Denied March 12, 1981.

Charles R. Purcell, Doherty & Purcell, Ltd., Chicago, Ill., for defendant–appellant.

Louis M. Fischer, Washington, D. C., for plaintiff–appellee.

Before SWYGERT and SPRECHER, Circuit Judges, and EAST,* District Judge.

EAST, District Judge.

John B. Nicosia (Nicosia) appeals his judgment of conviction and sentence to custody and a fine entered by the District Court on July 26, 1979 for endeavoring to influence witness Cornel Leahu (Leahu) to testify falsely before a grand jury in violation of 18 U.S.C. § 1503. We affirm.

## INDICTMENT AND JURY VERDICTS

Nicosia was indicted on March 16, 1978. Count I charged him with filing a false income tax return. Count II charged perjury. Count III charged Nicosia with endeavoring to influence witness Leahu to testify falsely before a grand jury in violation of 18 U.S.C. § 1503. On March 9, 1979, the jury found Nicosia not guilty on Counts I and II and guilty on Count III.

## ISSUES

Nicosia presents four issues on review:

1. Whether the District Court erred by excluding the defense of entrapment from the consideration of the jury.

2. Whether the District Court erred by receiving certain out–of–court statements, as non–hearsay declarations of co–conspirators, without finding by a preponderance of the evidence that such statements were shown to have been made by co–conspirators in furtherance of a conspiracy of which Nicosia was a member.

3. Whether the District Court's instructions on the elements of the offense of

---

* Honorable William G. East, Senior United States District Judge for the District of Oregon, sitting by designation.

obstruction of justice and on the defense of impossibility were erroneous.

4. Whether the indictment was sufficient to charge an offense under 18 U.S.C. § 1503 and whether the indictment was illegally amended.

*FACTS*

Nicosia, a physician, was mayor of East Chicago, Indiana from January 1964 through December 1971, two four–year terms. He appointed Leahu Superintendent of the East Chicago Sanitary District. During Nicosia's second term as mayor, the city undertook its Water Pollution Abatement Project (WPAP) under the direction of the Sanitary District. The evidence implicates Nicosia in a scheme for the contractor to kick back funds to public officials. In the Spring of 1969, Nicosia, Leahu, two Sanitary District engineers, and Alfred Kovach (Nicosia's former executive assistant) met in Nicosia's basement to discuss the scheme. Subsequent conversations occurred between Nicosia and Kovach. The plan involved establishing a phony Swiss consulting firm to which fees would be paid and then returned to the United States in cash. The contractor gave one million dollars to Leahu, who gave it to Kovach, who delivered the money to Nicosia.

Leahu and Kovach first testified to a grand jury that the money was given to Sidney Moss. After Leahu and Kovach were convicted, they decided to cooperate with the Government in exchange for recommendations for reductions in their sentences. Kovach testified before the Nicosia grand jury that Nicosia, not Moss, had received the money. On June 9, 1977, Leahu testified before the same grand jury under a grant of immunity.

On June 10, 1977 and again on July 7, 1977, Leahu met with Nicosia while wearing a concealed microphone and tape recorder. On June 10, Leahu told Nicosia that he had been subpoenaed and that Kovach had changed his story. Nicosia urged Leahu to stick to his story that Moss had received the money and to state that he could not recall any basement meeting or driving Kovach to Nicosia's house to deliver

money. He discussed the statutes of limitations and told Leahu to be careful about the dates he told the grand jury he had received payments. He repeatedly said that Leahu was to say that the mayor knew nothing about it. At the July 7th meeting, Nicosia again urged Leahu to say he could not remember anything involving Nicosia. These conversations were the basis of Nicosia's indictment for obstructing justice.

Nicosia identified his voice on the tape recordings at trial but denied attempting to influence Leahu improperly. Leahu testified at trial that during an unrecorded part of the July 7th conversation, Nicosia discussed giving him some money from the proceeds of the sale of some paintings.

*DISCUSSION OF THE ISSUES*

*Issue 1.*

Nicosia complains:

"The trial court refused to admit evidence tending to prove entrapment and refused to instruct the jury as to entrapment for the stated reason that this defense was not available unless [Nicosia] admitted that he had in fact committed the offense of obstruction of justice."

The District Court's ruling was fostered by this Court's decision in *United States v. Johnston*, 426 F.2d 112, 114 (7th Cir. 1970). Nicosia urges that the rule of *Johnston* should be reversed in light of other Circuits' later decisions, specifically *United States v. Demma*, 523 F.2d 981 (9th Cir. 1975). In *Demma*, the en banc court reversed the prior rule of the circuit, similar to the requirement of *Johnston*, that a defendant must admit the acts of the alleged crime in order to raise a defense of entrapment and held at 982:

"[A] defendant may assert entrapment without being required to concede that he committed the crime charged or any of its elements."

█ Most certainly the rule of *Demma*, as well as a similar rule in at least four other circuits, tempts a reconsideration of *Johnston* by the Court en banc. However, this appeal is not the vehicle to drive for such a review because, as later pointed out,

the evidentiary record on appeal is devoid of any evidence in support of a defense of entrapment calling for an appropriate jury entrapment defense instruction.

In this case, we look to the whole record before the District Court. Nicosia offered the testimony of Mr. Shapiro, one of the prosecutors, concerning the instructions given to Leahu, before his taped conversations with Nicosia. Even though the instructions directed Leahu to lie and to challenge Nicosia, the Court held that they were not probative of anything in the case. Nicosia seems to be claiming that since Leahu told Nicosia many lies and misled him into thinking Leahu was still loyal to him, entrapment occurred. He is wrong. "It is only when the Government's deception actually implants the criminal design in the mind of the defendant that the defense of entrapment comes into play." *United States v. Russell*, 411 U.S. 423, 434–36, 93 S.Ct. 1637, 1644–45, 36 L.Ed.2d 366 (1973).

Nicosia has attempted to interpret his conversations with Leahu to be innocent, but a glance at excerpts of the tapes [1] renders his efforts futile.

We are satisfied from our review of the entire evidentiary record that despite evidence that the Government expected to obtain evidence of obstruction of justice on the tapes, Leahu simply did not induce Nicosia to a criminal act which he lacked predisposition to commit. Although Nicosia

disputes the facts, the evidence indicates that Nicosia offered Leahu money in May and that he had sought a meeting with him. Leahu provided the opportunity for Nicosia to obstruct justice by asking him what he should say to the grand jury, but that is not entrapment. *See United States v. Perry*, 478 F.2d 1276, 1278 (7th Cir.), *cert. denied*, 414 U.S. 1005, 94 S.Ct. 363, 38 L.Ed.2d 241 (1973). (Mere solicitation is not enough to show entrapment).

The District Court did not exclude any relevant evidence offered by Nicosia in furtherance of his claim of entrapment. We agree with the statement of the District Court in ruling adversely to Nicosia's post–trial motions–that "the tapes leave no doubt that it was the defendant who initiated the obstruction of justice." Just as Mr. Justice Rehnquist wrote in *Russell*, 411 U.S. at 436, 93 S.Ct. at 1645: "[Nicosia] was, in the words of *Sherman [v. United States*, 356 U.S. 369 [78 S.Ct. 819, 2 L.Ed.2d 848] (1958)], not an 'unwary innocent' but an 'unwary criminal.' "

The District Court did not err in refusing to instruct the jury on the defense of entrapment.

*Issue 2.*

Nicosia relied upon this Court's ruling in *United States v. Santiago*, 582 F.2d 1128 (7th Cir. 1978), to support his assertion that the District Court erred in admitting evi-

---

1. "LEAHU: I didn't say anything. That's when I got frightened and I didn't know what to say. That's why I came to you.

NICOSIA: All you have to say is I do not recall.

LEAHU: The thing is I recall.

NICOSIA: You don't . . .

\*     \*     \*     \*     \*     \*

NICOSIA: I don't recall you ever bringing him to my house, and I don't think you ever recall.

LEAHU: Oh?

NICOSIA: Right?

LEAHU: That's, I, that's the . . . what it should be then, that I, I just don't recall ever driving him there . . . alright?

NICOSIA: As far as the meeting is concerned.

LEAHU: And on the meetings, don't remember?

NICOSIA: I don't, I honestly do not recall . . . ever having a meeting at Doc's house. Have you ever been to Doc's house? Yes sir.

LEAHU: Yeah, been several times.

NICOSIA: Several times. On what occasions? Social . . affairs . . . after all, he was mayor. Did you ever give him anything? No, sir, not that I recall, ever giving him anything. Did you ever have a meeting with, ah, with [unintelligible]. Well, that's what so and so said. If he says so, that's, that's his statement. I don't recall. How can I say something that I don't recall, that I don't even remember. How can I, I say this is so when it isn't, when I don't recall.

LEAHU: Is that what the lawyer said too?

NICOSIA: Yeah.

LEAHU: Barnett said this? Just tell them you don't remember?

NICOSIA: As far as I know, I don't recall ever, as far as I know."

dence of co–conspirators' out–of–court statements without first finding by a preponderance of the evidence that such statements were shown to have been made by co–conspirators in furtherance of a conspiracy of which Nicosia was a member.

*Santiago* states at page 1135:

"Although in the present case the trial judge used the terminology '*prima facie*' in making his preliminary finding as to the existence of the conspiracy, which heretofore has been the standard, our examination of the record satisfies us that there was no reversible error, as the independent evidence of the conspiracy was more than sufficient to meet the preponderance test as well, which we now adopt."

■ We do not read *Santiago* as projecting a rule that requires the District Court to make specific findings on the record in accordance with the preponderance of the evidence standard as a necessary predicate for admission of such co–conspirators' statements. *See also United States v. Continental Group, Inc.*, 603 F.2d 444, 457 (3d Cir. 1979), *cert. denied*, 444 U.S. 1032, 100 S.Ct. 703, 62 L.Ed.2d 668 (1980). Nor do we have to so rule in this appeal. Nevertheless we believe the record entry of such a finding is the better practice and exercise for the District Court to follow when confronted with an objection to or a motion to strike a co–conspirator's testimony relating to out–of–court statements of a defendant if for no other reason than to satisfy the District Court on the state of the evidence before it.

■ It is not clear from the record before us whether the District Court at the moment of overruling Nicosia's objection to the testimony used the *Santiago* approved preponderance of the evidence standard. We assume, *arguendo*, that the District

Court did not use that standard or even used a wrong standard. Nevertheless we find no reversible error in the admission of the testimony as the evidentiary record before the District Court abounds with independent evidence of the existing conspiracy and that Nicosia was a co–conspirator thereto.[2]

*Issue 3.*

18 U.S.C. § 1503 provides, *inter alia*: "Whoever . . . corruptly or by threats or force . . . endeavors to . . . obstruct . . . the due administration of justice, shall be fined . . . or imprisoned . . . or both."

The District Court instructed the jury: "The phrase 'endeavor to obstruct the due administration of justice' includes any effort or act to influence a witness before a federal grand jury to provide false, misleading or altered information to the grand jury."

■ Nicosia objected to the instruction and asserts that some threat or intimidation is necessary to fall within the section, citing *United States v. Metcalf*, 435 F.2d 754, 756–57 (9th Cir. 1970). Such an interpretation ignores the "or" in "corruptly or by threats or force" and the sound reasoning of *United States v. Howard*, 569 F.2d 1331, 1333 (5th Cir.), *cert. denied*, 439 U.S. 834, 99 S.Ct. 1547, 59 L.Ed.2d 795 (1978), and *United States v. Walasek*, 527 F.2d 676, 679 n.9 (3d Cir. 1975). "Clearly a non–coercive but corrupt attempt to influence, *e. g.*, by bribery, is within the proscribed conduct." *Id.*

Nicosia attempts to draw fine distinctions between the proof required under the specific clauses of the statute dealing with influencing witnesses by letters and injury and the final omnibus clause relating to obstruction of the due administration of justice.[3] He claims he was indicted under

---

**2.** We do not here follow the rule enunciated by the Third Circuit in *United States v. Continental Group, Inc.*, 603 F.2d 444, 457 (3d Cir. 1979):

"A long line of authority in the Second Circuit supports our conclusion that the denial of the appellants' motion to strike constituted

a finding by the court that the [District Court] had met its burden . . . ."

**3.** 18 U.S.C. § 1503 reads in its entirety: "Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any witness, in any court of the United States or before any United States com-

the specific language only, but his assertion is not true. The conduct charged falls within the omnibus clause, and the language of the indictment is an adequate charge under that provision. The indictment reads:

"That on or about June 10 and 11, 1977, and on or about July 7, 1977, at East Chicago in the Northern District of Indiana, Hammond Division,

### JOHN B. NICOSIA

defendant herein, did willfully, knowingly, and corruptly endeavor to influence, obstruct, and impede the due administration of justice in the Northern District of Indiana, by willfully, knowingly, and corruptly endeavoring to influence Cornel Leahu, a witness before the September 1975 Grand Jury, to testify falsely before the grand jury, that is, to testify in substance that events which occurred in certain years occurred in years prior to the date of their actual occurrence, that Leahu could not recall a meeting and conversation with Nicosia, and that Leahu could not recall driving one Alfred Kovach to Nicosia's residence."

The instruction given by the District Court is not erroneous.

■ Nicosia also argues that because specific intent is an element of the offense, the jury must also decide whether Leahu's testimony was relevant to the grand jury's investigation. He claims the Court erred by deciding the matter itself and instructing the jury that the testimony relative to Count III was relevant to the investigation of the duly empaneled grand jury. It is not clear to us how the relevance of the testimony, vis-a-vis, the grand jury investigation, affects Nicosia's subjective intent. *See United States v. Simmons,* 591 F.2d 206 (3d Cir. 1979). The District Court did not take away from the jury the question of specific intent.

We reject the contention.

■ Nicosia also asserts that § 1503 was not intended to make criminal acts or actions which have no potential for obstructing justice and tendered an instruction to that effect. The District Court rejected the instruction and in lieu thereof instructed the jury that:

"[I]f you find beyond a reasonable doubt that the defendant willfully, knowingly, and corruptly endeavored to influence, obstruct or impede the due administration of justice, it does not matter if the result intended by the defendant was impossible to obtain. The law prohibits the endeavor to obstruct justice and does not require that the due administration of justice was or could be influenced, obstructed, or impeded by the conduct of the defendant charged in Count III."

The District Court's rejection of the tendered instruction was correct and the instruction given is approved. *Osborn v. United States,* 385 U.S. 323, 333, 87 S.Ct. 429, 434, 17 L.Ed.2d 394 (1966); *United States v. Shoup,* 608 F.2d 950, 962–63 (3d Cir. 1979); *United States v. Jackson,* 607 F.2d 1219, 1223 (8th Cir. 1979), *cert. denied,* 444 U.S. 1080, 100 S.Ct. 1032, 62 L.Ed.2d 763 (1980); *United States v. Mitchell,* 514 F.2d 758, 761 (6th Cir.), *cert. denied,* 423 U.S. 847, 96 S.Ct. 86, 46 L.Ed.2d 68 (1975); *Unit-*

missioner or other committing magistrate, or any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States commissioner or other committing magistrate, in the discharge of his duty, or injures any party or witness in his person or property on account of his attending or having attended such court or examination before such officer, commissioner, or other committing magistrate, or on account of his testifying or having testified to any matter pending therein, or injures any such grand or petit juror in his

person or property on account of any verdict or indictment asserted to by him, or on account of his being or having been such juror, or injures any such officer, commissioner, or other committing magistrate in his person or property on account of the performance of his official duties, or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice, shall be fined not more than $5,000 or imprisoned not more than five years, or both."

ed States v. Rosner, 485 F.2d 1213, 1228–29 (2d Cir. 1973), cert. denied, 417 U.S. 950, 94 S.Ct. 3080, 41 L.Ed.2d 672 (1974).

*Issue 4.*

■ Nicosia asserts that the indictment is invalid because it failed to inform him of the conduct which constitutes the offense. A request for a bill of particulars was denied. Contrary to his claim that the language of the indictment was only conclusory, it actually lists the precise lies that Nicosia instructed Leahu to tell the grand jury. Nicosia's argument on this issue is specious.

■ The District Court amended the indictment to correct a typographical error in Count III. The date of Leahu's testimony was corrected from August 20, 1977 to October 20, 1977. Only the grand jury, not the court, can materially amend a criminal indictment. *Stirone v. United States,* 361 U.S. 212, 217–18, 80 S.Ct. 270, 273, 4 L.Ed.2d 252 (1960). The change was immaterial to the charge. It was a mere matter of form and did not require resubmission to the grand jury. *See Russell v. United States,* 369 U.S. 749, 770, 82 S.Ct. 1038, 1050, 8 L.Ed.2d 240 (1962). Nicosia shows no prejudice to his defense. The District Court did not err in entering the correct date on the indictment.

Nicosia's judgment of conviction and sentence as entered by the District Court is affirmed.

AFFIRMED.

SWYGERT, Circuit Judge, dissenting.

If I interpret the majority opinion correctly, the majority holds that the trial judge properly ruled, in light of *United States v. Johnston,* 426 F.2d 112 (7th Cir. 1970), that an entrapment instruction was unavailable because the defendant did not admit that he in fact committed the offense of obstruction of justice. The majority, then taking an inconsistent position, rules that there was no evidence of entrapment; therefore, an instruction on the issue was really unnecessary.

The trial judge, in contrast to the majority's ruling, viewed the evidence as sufficient to present a jury question on entrapment and only because the defendant did not admit his commission of the offense was the instruction not given. This is quite evident from the judge's ruling during the trial:

With regard to the instructions on entrapment, the Court has indicated to the defense that the Court will give an instruction on entrapment provided that the defendant, as indicated in *U. S. v. Johnston,* cited at 426 F.2d 112, will admit, or make an admission to the offense stated in Count III.

The record amply substantiates the trial judge's appraisal of that statement.

I

Cornel Leahu was superintendent of the East Chicago, Indiana, Sanitary District at the time the defendant was mayor of the city. Leahu received a seven–year sentence in connection with his role in the "kick–back" scandal involving the East Chicago Water Pollution Abatement Project. The Government's background evidence in the defendant's trial was submitted in an effort to show that some of the money intended for the general contractor on the project and realized from the sale of city bonds came into the hands of city officials, including the defendant.

Shortly after entering a federal prison, Leahu contacted an IRS special agent and indicated his willingness to cooperate in the continuing investigation of the scandal with the hope that his sentence would be reduced. As a result of this contact, IRS agents and Department of Justice personnel arranged to have Leahu get in touch with the defendant, while wearing a concealed recording device. Two conversations took place between Leahu and the defendant. Both contained ostensibly inculpatory statements on the part of the defendant. At trial the defendant testified that the recordings were accurate; however, he denied that his statements were susceptible of the sinister interpretation which the Government gave them.

An FBI agent testified that one of the purposes of tape recording the initial conversation was to obtain evidence of obstruction of justice. Before contacting the defendant, an IRS agent asked Leahu if he would be willing to record a conversation with Nicosia. Leahu responded by inquiring whether if he did so it would constitute cooperation; the agent answered that it would be noted. Later Government prosecutors told Leahu that what he was doing would be regarded as cooperation. At about this time, Leahu told Carl DeCicco, a fellow inmate in the federal prison, that he was hoping to get probation or a transfer to a minimum security prison for his cooperation.

In summary, the record lends itself to a plausible defense theory that Government law enforcement agents and officials attempted to obtain evidence, through the taped conversations, of a crime for which the defendant only tangentially was under investigation. Nicosia was induced to talk to Leahu, after the latter had been instructed by the prosecutors to lie to the defendant about his cooperation with the Government. At the very least, this evidence was sufficient to raise the issue of entrapment. Although the burden is on a defendant to present some evidence of entrapment, the quantum to make it a jury question needs only be slight. The Ninth Circuit stated the prevailing view in *Notaro v. United States*, 363 F.2d 169, 174 (9th Cir.1966):

> [I]t seems quite clear that when it can be said that the issue of entrapment has fairly arisen, whether by testimony given during the presentation of the prosecution's case in chief or by testimony offered in defense, the defendant has met whatever "burden" rests upon him.

*See also United States v. Riley*, 363 F.2d 955, 959 (2d Cir.1966). The district judge's appraisal was correct; there was sufficient evidence to constitute an issue of entrapment.

## II

After referring to the trial judge's refusal to instruct the jury on entrapment for the stated reason that the defendant did not admit the charge and then observing that the judge's ruling was based on *United States v. Johnston, supra*, the majority mentions *United States v. Demma*, 523 F.2d 981 (9th Cir.1975), where the Ninth Circuit reversed a prior ruling of that court, similar to the *Johnston* requirement. According to the majority here, "Most certainly the ruling in *Demma*, as well as a similar rule in at least four other circuits, tempts a reconsideration of *Johnston* by the Court en banc." But then illogically and incorrectly, in my judgment, the majority says that this is not the case for such reconsideration.

In *Johnston* the defendant interposed a defense of entrapment. The Government sought to show that the defendant was predisposed to commit crimes and that police acted reasonably in providing him an opportunity to commit the offense with which he was charged. In disposing of the issue, this court, without discussion, announced the rule challenged in the instant case:

> There is divergence of opinion among the Circuits. ... In the District of Columbia Circuit, as *Hansford* [303 F.2d 219] *supra*, indicates, one may deny commission of the act and still plead entrapment into committing it. In this Circuit, *United States v. Roviaro*, 7th Cir.1967, 379 F.2d 911, and cases there cited; *United States v. Carter*, 7th Cir.1963, 326 F.2d 351, absent admission of the act an instruction on entrapment will not be submitted to the jury.

*United States v. Johnston, supra*, 426 F.2d at 114. *United States v. Roviaro*, 379 F.2d 911, 914, cited in *Johnston*, stated the rule in equally cryptic terms:

> Defendant also urges that [a government informer] entrapped defendant. However, defendant admitted no criminal acts. In such a situation, it has been held that a defendant may not use the entrapment defense. *Ortega v. United States*, 348 F.2d 874, 876 (9th Cir.1965); *but cf. Hansford v. United States*, 303 F.2d 219, 221 (9th Cir.1962).

It is significant that this court in *Roviaro* cited for its sole support *Ortega v. United States*, 348 F.2d 874 (9th Cir.1965). The significance lies in the fact that the *Ortega* decision, which followed an earlier Ninth Circuit case, *Eastman v. United States*, 212 F.2d 320 (9th Cir.1954), was disapproved by the *Demma en banc* court. The Ninth Circuit in the latter case made its position clear: "We overrule *Eastman v. United States* (9th Cir.1954) 212 F.2d 302, . . . and disapprove all authority in our circuit that relies on *Eastman* and its progeny." *Demma, supra*, 523 F.2d at 982.

It seems appropriate to quote Judge Hufstedler's opinion in *Demma* at some length for it expounds by unassailable reasoning why the *Johnston* rule in this circuit should be overruled:

> The rule that a defendant wishing to claim entrapment must concede the crime charged was first announced in this circuit in *Eastman v. United States, supra*. The theory behind the rule is that it is factually inconsistent for a defendant to deny the crime charged, and, at the same time, to claim entrapment.
>
>      *     *     *     *     *     *
>
> The *Eastman* rule must be rejected for several reasons. First, in some of its applications, including the one by the district court in the case at bar, the rule conflicts with prevailing Supreme Court authority. [*Sorrells v. United States*, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932).] Second, in other of its applications the rule has become detached from its theoretical moorings and cannot be justified by the inconsistency theory. Third, the inconsistency theory itself is seriously infirm.
>
>      *     *     *     *     *     *
>
> The theory of the *Sorrells* approach to entrapment is that the acts necessary to constitute any federal crime must be *non-entrapped* acts; non-entrapment is an essential element of every federal crime which is put in issue whenever evidence is introduced suggesting that an unpredisposed defendant was induced by the Government to commit the acts charged. In *Sorrells*, Chief Justice Hughes expressly rejected the Government's contention that a claim of entrapment necessarily involved an admission of guilt and that it was in the nature of a plea in bar.
>
> "This, as we have seen, is a misconception. The defense is available, not in the view that the accused though guilty may go free, but that the government cannot be permitted to contend that he is guilty of a crime where the government officials are the instigators of his conduct." (287 U.S. at 452, 53 S.Ct. at 216.)
>
> As the district judge in the case at bar realized, the *Eastman* rule, by its terms, requires that a defendant wishing to claim entrapment concede the state of mind necessary to constitute the crime charged as well as the constituent acts. However, the requirement that the defendant concede a state of mind is in direct conflict with the *Sorrells* conception of entrapment. Under *Sorrells*, whenever the element of non-entrapment is put in issue the Government must prove beyond a reasonable doubt that the acts charged were non-entrapped acts. The Government bears this burden whether or not the crime charged involves a subjective, mental element and whether or not the defendant concedes any mental element involved. The *Eastman* rule relieves the Government of this burden whenever the crime charged involves a mental element which the defendant refuses to concede. Relieving the Government of the burden of proving that the necessary acts were non-entrapped conflicts fundamentally with the *Sorrells* conception of entrapment.
>
> *Sorrells* recognized that the special and perverse evil of entrapment is that the Government induces an otherwise innocent person to commit certain acts and then attempts to punish him for those very acts. If the Government, in addition to inducing acts, induces scienter, then the evil has been multiplied. But whether or not the Government succeeds in

inducing or even tries to induce scienter, the primary, basic evil is that the Government has instigated the very activity which causes an otherwise innocent person to suffer a criminal sanction.

*Demma, supra*, 523 F.2d at 982–84 (footnotes omitted). It is also important to note that the District of Columbia Circuit, *en banc*, in a unanimous decision in *Hansford v. United States*, 303 F.2d 219 (D.C.Cir. 1962), recognized that the alternative defenses of innocence and entrapment are not inconsistent.

In conclusion, this court should adopt the *Demma* and *Hansford* approach and overrule *Johnston*. I would reverse and remand for a new trial.