James F. LUMAN, Plaintiff-Appellee,

v.

Hans G. TANZLER, Jr., et al., Defendants-Appellants.

No. 26558.

United States Court of Appeals Fifth Circuit.

April 22, 1969.

Rehearing Denied May 28, 1969.

William Lee Allen, William M. Madison, Claude L. Mullis, Jacksonville, Fla., for appellant.

Robert P. Smith, Jr., Jacksonville, Fla., Bedell, Bedell, Dittmar & Smith, Jacksonville, Fla., of counsel, for appellee.

Before PHILLIPS *, BELL, and MORGAN, Circuit Judges.

* Of the Tenth Circuit, sitting by designation.

BELL, Circuit Judge:

Defendants-appellants are members of the Police Disciplinary Hearing Board of the City of Jacksonville, Florida. Luman is a Jacksonville policeman who was suspended from the force by the Chief of Police for conduct allegedly "prejudicial to the efficiency, good name and reputation of the Jacksonville Police Department." Thereafter state criminal charges were filed against him. Defendants then proposed to hold an administrative hearing on the charges of the Chief of Police. Luman sought to have the hearing continued in view of the pendency of the state charges which admittedly arose out of the same activity that gave rise to his suspension by the Chief of Police. The continuance was denied.

Luman then sought a federal injunction, on a privilege against self-incrimination Fifth Amendment basis, to restrain the holding of such a hearing until after disposition of the state criminal charges. The district court granted a permanent injunction and this appeal followed.

In issuing the injunction, the district court said:

"If plaintiff were to appear before the Board, any testimony he might give could be used against him in the State criminal case now pending, either as evidence or as a means of obtaining evidence. If plaintiff should fail to appear, or refuse to testify, he could be dismissed pursuant to Rule 5:39(x) of the Jacksonville Police Department. Such a choice is impermissible under the Constitution of the United States. See Garrity v. New Jersey, 385 U.S. 493 [87 S.Ct. 616, 17 L.Ed.2d 562] (1967), Spevack v. Klein, 385 U.S. 511 [87 S.Ct. 636, 17 L.Ed.2d 574] (1967), Uniformed Sanitation Men Ass'n, Inc. v. Comm'r of Sanitation of City of New York [392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089] 36 U.S.L. Week 4534 (U.S. June 10, 1968), Gardner v. Broderick [392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082] 36 U.S.L. Week 4536 (U.S. June 10, 1968). In any event, the Board, at a hearing presumably for the benefit of the accused, cannot reinstate plaintiff so long as the criminal charges are pending. This Court cannot envision any public interest that would be served by having a hearing prior to the disposition of those charges."

The court thus saw Rule 5.39(x) as placing Luman in a constitutionally impermissible dilemma such as to require an injunction. The court also gave weight to the lack of public interest in having a hearing. We are constrained to the view that the injunction was not due.

The Rule and Regulations governing the Jacksonville Police Department define "conduct prejudicial to the efficiency, good name and reputation of the department" to include the following:

5.39(m)—Commission of a Criminal Act in violation of a State or Federal Statute.

\*     \*     \*     \*     \*

5.39(x)—Wilful refusal or failure to appear before any Court, judge, prosecuting officer, board or body authorized to conduct any hearing or inquiry in any investigation for a violation of any of the statutes of this state when requested to do so; or, having appeared, refusal to testify or answer any question concerning his conduct as a police officer or the performance of his duties on the grounds that his testimony or answers would tend to incriminate him; or refusal to waive immunity from prosecution on account of any matter about which he may be asked to testify at any such hearing or inquiry.

The sequence of pertinent events is as follows. Luman was suspended from the police force on December 8, 1967. He timely requested a hearing before the Police Disciplinary Board. On December 29, 1967 and February 9, 1968, after Luman had requested a hearing, the Chief of Police filed two sets of written charges against him. On March 7, 1968, the State of Florida filed a nine count criminal information against him. The criminal charges involved allegations

of larceny, burglary, and conspiracy. As stated, it is agreed that the criminal charges arise out of the same activities as gave rise to Luman's removal from the police force. After the state criminal charges were filed, defendants notified Luman to appear for a hearing. It was then that he sought a continuance of the hearing until disposition of the criminal charges by the state.

It is undisputed that the administrative hearing will be of no avail to Luman until there has been a disposition of the state charges. This follows from the answer of defendants that: "Plaintiff cannot possibly be restored to duty and reinstated as a member of the Jacksonville Police Department, as a result of a hearing to be held June 5, 1968 [the proposed hearing date], or at any other time before the trial and disposition of the criminal charges pending against him." This fact is the basis for Luman's point, in addition to his privilege against self-incrimination argument, that no useful purpose could be served by a hearing and that the public interest would not suffer from a continuance. Defendants, on the other hand, urge that the matter of Luman's suspension should be settled one way or the other in the public interest of keeping the police force at full strength. Until the question is settled, they argue, they are not at liberty to replace Luman although he has been removed from the force.

Luman's position is that defendants seek to put him on terms with respect to his Fifth Amendment privilege against self-incrimination.[1] He urges that they offer him only the choices of risking the forfeiture of his job for failure to comply with Rule 5.39(x), or the possibility of self-incrimination if he does comply.

As we read the Supreme Court opinions in this area, Garrity v. New Jersey, 1967, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562; Gardner v. Broderick, 1968, 392 U.S. 280, 88 S.Ct. 1920, 20 L.Ed.2d 1082; and Uniformed Sanitation Men Ass'n v.

Comm'r. of Sanitation, 1968, 392 U.S. 280, 88 S.Ct. 1917, 20 L.Ed.2d 1089, the choices faced by Luman do not run afoul of his asserted constitutional right. The first phase of the problem was answered in the context of testimony coerced by a rule similar to Rule 5.39(x) at an administrative hearing, with the testimony given being used later against the employee in a criminal trial. This was the situation in Garrity v. New Jersey where the Supreme Court said:

"We now hold the protection of the individual under the Fourteenth Amendment against coerced statements prohibits use in subsequent criminal proceedings of statements obtained under threat of removal from office, and that it extends to all, whether they are policemen or other members of our body politic." 385 U.S. at 500, 87 S. Ct. at 620.

The issue in *Garrity* was the scope of the privilege against self-incrimination. The court approached the problem by posing the question " * * * whether the accused was deprived of his 'free choice to admit, to deny, or to refuse to answer.'" 385 U.S. at p. 496, 87 S.Ct. at p. 618. Concluding that he was deprived of his free choice by the impact of the forfeiture of employment rule, the statements were held inadmissible in the subsequent criminal proceeding.

This, however, left unanswered the other side of the question: whether a rule such as Rule 5.39(x) could be validly used in the first place to provide such coercion. The answer, in the negative, came in the *Gardner,* and *Uniformed Sanitation Men* cases, supra.

In *Gardner,* the court said: " * * * the mandate of the great privilege against self-incrimination does not tolerate the attempt, regardless of its ultimate effectiveness, to coerce a waiver of the immunity it confers on penalty of the loss of employment." *Gardner* involved a grand jury investigation of criminal activities involving policemen, rather than an

---

[1]. Applicable against appellant city officials under the Fourteenth Amendment since

Malloy v. Hogan, 1964, 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653.

administrative hearing. Also, the state had an immunity statute which conferred immunity on Gardner, which he was asked to waive on threat of discharge. The *Gardner* court, however, spoke to the situation of the administrative hearing:

> "If appellant, a policeman, had refused to answer questions specifically, directly, and narrowly relating to the performance of his official duties, without being required to waive his immunity with respect to the use of his answers or the fruits thereof in a criminal prosecution of himself, Garrity v. New Jersey, supra, the privilege against self-incrimination would not have been a bar to his dismissal."

In the *Uniformed Sanitation Men* case, the court held that the city sanitation employees could not be put to the choice under a rule quite like Rule 5.39(x),[2] between surrendering their constitutional rights or their jobs. Fifteen men were involved. Three were asked to sign waivers of immunity before the grand jury and were thus in the same category as the policeman in *Gardner*. Twelve were discharged for refusing to testify at a city administrative hearing, asserting their privilege against self-incrimination. The court concluded that they were wrongfully dismissed.

The question for this court then is how stands Luman in light of these authorities? There is no contention that defendants could grant him immunity from state prosecution. Cf. the Florida statute on immunity as it relates to courts, F.S. A. § 932.29. Thus we do not have a precise *Gardner* case. We do, however, have a *Uniformed Sanitation Men* case, and under its rationale, Luman is forearmed with the fact that he cannot be discharged for refusing to testify. He no longer faces the choice of self-incrimination or job forfeiture under Rule 5.39(x).

██ In sum, the present posture of the law, as we understand it, leaves the parties in this position. Rule 5.39(x) cannot be applied against Luman. At the administrative hearing he will have a "free choice to admit, to deny, or to refuse to answer."[3] This is full vindication of the Fifth Amendment privilege against self-incrimination. On the other hand, defendants may conduct a hearing within the confines of the charges against Luman which relate to the performance of his official duties.

Lastly, we must consider Luman's position that we need not try to unravel the decisional threads of the *Garrity, Gardner,* and *Uniformed Sanitation Men* cases. He argues that because the City of Jacksonville has not shown that important public values would be frustrated by the injunction, the injunction should be continued and the district court affirmed. This, however, misconceives the burden of justification in this area and ignores important institutional interests inherent in the federal system. The injunction must be

---

2. Section 1123 of the New York City Charter provides:

> "If any councilman or other officer or employee of the city shall, after lawful notice or process, wilfully refuse or fail to appear before any court or judge, any legislative committee, or any officer, board or body authorized to conduct any hearing or inquiry, or having appeared shall refuse to testify or to answer any question regarding the property, government or affairs of the city or of any county included within its territorial limits, or regarding the nomination, election, appointment or official conduct of any officer or employee of the city or of any such county, on the ground that his answer would

tend to incriminate him, or shall refuse to waive immunity from prosecution on account of any such matter in relation to which he may be asked to testify upon any such hearing or inquiry, his term of office or employment shall be vacant, and he shall not be eligible to election or appointment to any office or employment under the city or any agency."

3. In the absence of an immunity statute, we are not faced with the question of the right of a city to discharge an employee who refuses to answer. Cf. Gardner v. Broderick, 392 U.S. at 276–278, 88 S.Ct. at 1915, 1916.

grounded on a violation of federal constitutional or statutory rights. Here there are no such grounds.

Reversed and remanded with direction that the injunction be dissolved.