UNITED STATES of America, Appellee,

v.

Dwight Conrad JURGENS, Appellant.

No. 79–1400.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 14, 1980.

Decided Aug. 25, 1980.

William L. Osterhoudt, San Francisco, Cal., for appellant.

Jo-Lynne Q. Lee, Asst. U. S. Atty., San Francisco, Cal., for appellee.

Before TANG, FLETCHER and ALARCON, Circuit Judges.

ALARCON, Circuit Judge:

This is an appeal from a judgment revoking appellant's probation.

On February 8, 1979, appellant entered a plea of guilty to Count IV of an indictment charging him with possession of a United States Treasury check taken from mail delivered to the residence club where he was employed. He was ordered to return to court for sentencing on March 8, 1979. On that date, appellant's counsel advised the court that appellant was well regarded at the residence club where the check was stolen and that his present employer, Mr. James Bartsch, with full knowledge of his criminal conduct, wished to retain him as a valued employee and hoped he would be granted probation.

Appellant told the court that he was at a loss to know why, on this occasion as in the past, he violated the trust of friends who had confidence in him.

The court then committed appellant to the custody of the Attorney General for imprisonment for a period of five years. Pursuant to 18 U.S.C. Section 3651, the court ordered that appellant be confined for six months, and suspended the remainder of the sentence on condition that he serve a period of four years, ". . . probation to commence upon completion of his term of confinement . . ." The court then granted appellant a further stay of the execution of the sentence until March 22, 1979. At the conclusion of these proceedings the court advised appellant that ". . . after you come out of prison, if you're returned here on any other offense, or for violation of any term of parole [sic] you will go directly to jail for the full five year period."

On April 30, 1979 the probation officer filed a report with the trial court which recited that "During the course of the presentence investigation, which was ordered on February 8, 1979, and subsequent to the imposition of sentence on March 8, 1979, Mr. Dwight Conrad Jurgens allegedly embezzled approximately $5,000 from his employer, Mr. James Bartsch, in Berkeley, California. This information was not known to the court at the time of sentencing."

On April 30, 1979 the trial court notified appellant's counsel that a hearing would be held on May 24, 1979 to determine why probation should not be revoked. Prior to the hearing date appellant's counsel filed a Memorandum with the trial court in opposition to revocation of probation on the ground that appellant was not yet on probation when the acts of embezzlement occurred.

At the hearing appellant's trial counsel advised the court that the prosecution's witness to the acts set out in the probation report need not be called because "the underlying facts will not be contested." The trial court ordered probation revoked. Ap-

pellant was committed for the remainder of the suspended five-year sentence.

The sole issue raised on this appeal is whether the trial court had the jurisdiction to revoke probation and to order appellant committed for the remainder of the suspended five-year sentence.

Appellant contends that the trial court's power to revoke probation is limited to conduct which occurs during the period of probation.

■■■ We disagree. A trial court may revoke its order granting probation whenever facts are discovered, which were unknown to the court at the time probation was granted, which affect the defendant's suitability for community supervision rather than imprisonment.[1] In *Trueblood Longknife v. United States*, 381 F.2d 17 (9th Cir. 1967), *cert. denied*, 390 U.S. 926, 88 S.Ct. 859, 19 L.Ed.2d 987 (1968), the same issue was presented to this court. We held that a trial court has the discretion to revoke probation where facts are later discovered which, if known by the trial judge, would have led him to deny probation in the first instance. To hold otherwise would lead to an absurd result. ". . . [T]he judge would be forced into the position of saying that while he is quite convinced that the best interests of both the public and the defendant would be served were the de-

fendant not on probation, he is irrevocably bound by his initial, albeit erroneous, grant of probation" (*Trueblood Longknife v. United States*, 381 F.2d at 17 at pg. 20).

Appellant has argued that *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) have "thoroughly undermined" the holding in *Trueblood Longknife*. These cases stand for the principle that a defendant is entitled to procedural due process of law in probation or parole revocation proceedings. No question has been raised in the matter before us that the defendant was denied due process in the conduct of the revocation proceedings. It is true, as appellant argues, that in the *Morrissey* and *Gagnon* cases the United States Supreme Court has rejected the right-privilege distinction in parole and probation revocation proceedings. Had the court revoked probation in the instant matter without affording defendant notice of the allegations against him, the right to counsel, a hearing, the right to confrontation or the right to present evidence in his behalf, we would have been required to determine if *Morrissey* or *Gagnon* were applicable under such circumstances. (*See United States v. Dane*, 570 F.2d 840, 843 (9th Cir. 1978).)

---

1. The trial court has broad discretion in determining whether to grant probation, and may consider anything concerning the defendant's personal history which bears on his suitability for community supervision. *See United States v. Beecroft*, 608 F.2d 753, 762 (9th Cir. 1979); *United States v. Nu-Triumph, Inc.*, 500 F.2d 594 (9th Cir. 1974). However, once probation has been granted the fifth amendment protection against double jeopardy and the general policy in favor of sentencing finality come into play. The trial court's discretion is then limited in the sense that revocation cannot be ordered simply on a re-evaluation of the defendant's background based on information known to the court prior to sentencing, but rather, must be predicated on new and significant information received after sentencing which affects the court's judgment as to the defendant's suitability for community supervision. Ordinarily this would be information concerning *renewed* criminal conduct of the defendant. An example of such information is found in *United*

*States v. Ross*, 503 F.2d 940 (5th Cir. 1974) where the "probationer" engaged in criminal activity (resulting in a guilty plea to state charges of possession of drugs) between the time of sentencing and the technical commencement of probation. Although reversing on procedural grounds, the court concluded that revocation would not be improper.

"Sound policy requires that courts should be able to revoke probation for a defendant's offense committed before the sentence commences; an immediate return to criminal activity is more reprehensible than one which occurs at a later date."

*Ross* is cited with approval in both the majority and dissenting opinions in *United States v. Dane*, 570 F.2d 840, 843–44 (majority opinion), 846–47 (dissenting opinion) (9th Cir. 1977). Here the trial court discovered that Jurgens, after sentence was imposed, continued to embezzle from the employer who vouched for him at the sentencing hearing. This information was certainly new and significant.

■ Appellant also claims that the order of the court—that the defendant serve the remainder of the five-year sentence—was "an increase in punishment forbidden by the Fifth Amendment." Again, we disagree. The original order of the court was that appellant be imprisoned for five years. The trial judge suspended all but the first six months of this sentence. He did so because under the facts then known to him, he was satisfied the ends of justice and the best interest of the public would be served by placing appellant on probation. However, when the trial judge learned that he had been misled into determining that appellant was a suitable candidate for probation by a fraudulent concealment of his continuing criminal conduct, including the betrayal of the employer who spoke up for him at the sentencing hearing, the original and not an increased sentence was ordered into effect.

AFFIRMED.