**UNITED STATES of America**

v.

**Gilbert L. DOZIER.**

**Crim. No. 80–2–B.**

United States District Court,
M. D. Louisiana.

July 16, 1982.

James S. Lemelle, Asst. U. S. Atty., Baton Rouge, La., for plaintiff.

James E. Boren, Lennie Perez, Boren, Holthaus & Perez, Baton Rouge, La., Thomas B. Rutter, Philadelphia, Pa., for defendant.

POLOZOLA, District Judge:

In January of 1980, a federal grand jury for the Middle District of Louisiana returned a five count indictment against the defendant, Gilbert L. Dozier. Count One of the indictment charged that Dozier had violated the Racketeer Influenced and Corrupt Organizations (RICO) statute, 18 U.S.C. § 1962(c). Counts Two through Five charged the defendant with a violation of the Hobbs Act, 18 U.S.C. § 1951.[1] On September 23, 1980, a jury returned a verdict finding Dozier guilty on all counts except Count Four. After post-trial motions were denied, the Court sentenced Dozier to five years imprisonment and a fine of $25,000 for the RICO conviction and to a consecutive five-year term of imprisonment on Count Two. In addition, the Court suspended the imposition of sentence as to imprisonment only on Count Three and placed Dozier on probation for a period of five years which probation was to com-

---

1. For a more detailed analysis of the indictment, see the discussion set forth in *United States v. Dozier,* 672 F.2d 531 (5 Cir. 1982), rehearing and rehearing en banc denied, 677 F.2d 113 (5 Cir. 1982).

mence upon Dozier's release from prison. Imposition of sentence on Count Five was suspended. The Court also suspended execution of the sentence pending appeal.

Thereafter, the defendant filed a timely appeal with the Fifth Circuit Court of Appeals. While this appeal was pending, Dozier filed a motion with the district court alleging juror misconduct on the part of the jury which convicted Dozier.[2] Attached to this motion was a letter allegedly written on February 28, 1982 by Ida L. Sanders, a juror who served on the trial jury.[3] While Dozier's motion was pending, the United States filed a Motion to Revoke Appeal Bond and To Revoke the Probation of the Defendant, Gilbert L. Dozier. Dozier was arrested and placed in jail pending a probation revocation hearing.[4] In its motion to revoke Dozier's bond and probation, the United States charged that Dozier violated the terms of his bond and probation by committing certain criminal acts against the United States in violation of 18 U.S.C. § 371 and 2, 18 U.S.C. § 1503, and 18 U.S.C. § 1341.[5] More specifically, the government's motion charged: [6]

A. From on or about November 1, 1981, and continuously thereafter up to and including the date of the filing of this motion, the defendant, Gilbert L. Dozier, willfully and knowingly did combine, conspire, confederate and agree together with persons known and unknown to commit the following offenses against the United States:

1. To corruptly endeavor to influence, obstruct and impede the due administration of justice in violation of Title 18, United States Code, Section 1503 and 2, and

2. To devise a scheme and artifice to defraud the United States District Court for the Middle District of Louisiana, the United States of America and the citizens of the United States of America, by placing or causing to be placed in an authorized depository for mail matter, a letter dated February 28, 1982, addressed to Mr. Camille F. Gravel, Jr., 780 North, Baton Rouge, Louisiana, in violation of Title 18, United States Code, Section 1341 and 2.

The government's motion then sets forth eleven overt acts which were allegedly committed by Dozier and others working in concert with him. These acts generally charge that Dozier, acting with others whom he paid substantial sums of money, influenced a juror to write a letter to Dozier's attorneys and to the trial judge which would falsely allege juror misconduct during the course of the trial.

The government further charged in its motion that Dozier violated his probation by asking Huey Martin to burglarize the office of Ron Menville and to have an unknown person killed.[7]

In response to the government's charges, Dozier filed a motion to stay and a motion

2. The motion was styled: Motion for Leave to Examine a Juror In Camera and or an Order Prohibiting Contacts With Jurors.

3. The letter was actually written on April 28, 1982. The evidence clearly shows, as will be disclosed later, that at the time Mrs. Sanders wrote the letter, she was cooperating with the Federal Bureau of Investigation. Mrs. Sanders testified at the probation revocation hearing that except for the statement in the letter which declared she served as a juror at Dozier's trial, all other statements made in the letter were false.

4. Before the final probation revocation hearing was held, Dozier was released from jail on a $500,000 bond. He remained free on bond until a judgment was rendered by the Court revok-

ing his probation. During the same period, the Fifth Circuit Court of Appeals and the United States Supreme Court refused to stay the mandate issued by the Court of Appeals pending an appeal to the United States Supreme Court. Dozier is now confined at the Federal Correctional Institution in Fort Worth, Texas.

5. Because of their length, these statutes will not be reproduced.

6. See Document Number 184 in the record of this case.

7. In reaching its decision to revoke Dozier's probation, the Court did not consider the allegation that Dozier attempted to have an unknown person killed.

to dismiss.[8] On June 18, 1982, the Court, for written reasons to be assigned, denied each of these motions.[9] The Court now assigns reasons for its decision to deny Dozier's motions to stay and to dismiss. Furthermore, in accordance with Rule 32.1(a)(2) of the Federal Rules of Criminal Procedure and the guidelines set forth in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972) and *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), the Court hereby assigns written reasons in support of the Court's decision to revoke the defendant's probation.

## I. DEFENDANT'S MOTION TO STAY

Dozier filed a motion to stay the probation revocation proceeding until "the underlying allegations of criminal conduct by the defendant are finally resolved". In the alternative, Dozier requested the Court to grant him "judicial use and derivative use immunity as to the defendant's testimony at the revocation hearing." The government filed an opposition to defendant's motion. As noted earlier, defendant's motion to stay and in the alternative for a grant of judicial use immunity must be denied.

Prior to analyzing the jurisprudence on this issue, two points must be emphasized by the Court. First, it is clear that the Court fully advised the defendant and his counsel prior to the probation revocation hearing that no adverse inference would be drawn by the Court if the defendant chose to remain silent. In other words, the Court carefully and clearly advised the defendant that he had a right to remain silent during the probation revocation hearing, and if he chose not to testify or present any evidence, the Court would not infer any evidence of guilt as a result of the defendant's refusal to testify or present evidence. At the hearing Dozier chose not to testify. The Court did not draw any adverse inference against Dozier as a result of his refusal to testify when the Court rendered its decision to revoke Dozier's probation. Second, there was absolutely no evidence presented by the defendant, nor could any have been presented, which would in any way show that the government was unlawfully attempting to gather evidence at the probation revocation hearing for use at a criminal prosecution which the government might initiate in the future.

Furthermore, the Court must note that both the Court and the government had a strong interest in the prompt resolution of the charges against Dozier which were contained in the probation revocation complaint. Prior to the government's charges, Dozier had filed a motion seeking to have the Court interview the jury which convicted him to determine if a new trial should be granted for alleged jury misconduct. In support of this motion, Dozier attached the letter written by Mrs. Sanders, the very same letter which the government charges that Dozier illegally and unlawfully obtained. The Court postponed a decision on Dozier's motion seeking juror interviews pending a resolution of the government's proba-

---

**8.** Dozier also filed the following motions which were ruled on by the Court prior to the probation revocation hearing: motion to suppress evidence; motion to compel disclosure of electronic surveillance authorization and application for electronic surveillance authorization; application to compel affirmation or denial of occurrence of electronic surveillance; motion for leave to interview jurors; motion for discovery; motion to disqualify Judge Frank J. Polozola pursuant to 28 U.S.C. § 455(b)(1); motion for pre-trial hearing as to tape recordings and transcripts; supplemental motion to dismiss; supplemental motion to disqualify Judge Polozola.

**9.** On June 20, 1982, the defendant filed a Petition for Writ of Mandamus, or in the Alterna-

tive, For a Writ of Prohibition with the Fifth Circuit Court of Appeals. The defendant also filed an application for a stay pending decision on the petition for a writ of mandamus and/or prohibition and for a stay pending appeal. This writ was filed seeking to have the Court of Appeals order Judge Polozola to disqualify himself, or in the alternative to dismiss the probation revocation motion or to stay the proceedings. The Fifth Circuit Court of Appeals denied defendant's application for a stay pending a decision on the petition for a writ of mandamus and/or prohibition and for stay pending appeal. The Court of Appeals also denied defendant's petition for writ of mandamus and/or prohibition.

tion revocation charges against Dozier. Thus, a prompt resolution of the validity of the government's claim that Dozier unlawfully obtained Mrs. Sanders' letter was required. The decision by the Court to balance the interest of the government against the interest of Dozier insofar as the validity of the Sanders letter was concerned does not rise to the level of an impermissible burden on the exercise of Dozier's constitutional rights.

Many cases have held that parallel criminal and civil trials or investigations do not raise questions of constitutional magnitude with respect to the privilege against self-incrimination. The most recent case decided by the Fifth Circuit Court of Appeals on this issue is *Hoover v. Knight*, 678 F.2d 578 (5 Cir. 1982).[10] In the *Hoover* case, the issue before the Court for determination was "the question of whether the appellee's fifth amendment privilege against self-incrimination was unconstitutionally impaired by the refusal of the hearing examiner to postpone the administrative hearing pending the outcome of a related criminal prosecution." *Hoover*, p. 580. After carefully analyzing the jurisprudence, the Fifth Circuit Court of Appeals concluded that the failure to postpone the administrative hearing where the party refused to testify pending a resolution of related criminal charges, did not violate the defendant's privilege against compelled self-incrimination. The Court recognized that the appellee "was faced with difficult choices to make regarding the manner of litigating her cases", but concluded that she "had the right to assert her constitutional privilege, and did so." *Hoover*, p. 582. The Court also reviewed the jurisprudence which supported its decision and stated:

> As in the instant case, these fifth amendment issues frequently arise when parallel criminal, civil or administrative proceedings are pending. In *Luman v.*

*Tanzler*, 411 F.2d 164 (5th Cir. 1969), cert. den., 396 U.S. 929, 90 S.Ct. 264, 24 L.Ed.2d 227 (1969), a police officer was suspended from the Jacksonville, Florida, Police Department for conduct prejudicial to the "efficiency, good name and reputation" of the department. Related state criminal charges were thereafter filed against the officer. He sought to have his administrative hearing continued in view of the pending state criminal proceedings. Upon the police department's refusal to postpone the administrative hearing, the officer sought an injunction in federal court. The Fifth Circuit Court of Appeals held that the police department's refusal to postpone the administrative hearing did not infringe any of the officer's constitutional rights. It was said that "At the administrative hearing [the officer] will have a free choice to admit, deny, or refuse to answer. This is full vindication of the fifth amendment privilege against self-incrimination." *Luman v. Tanzler*, 411 F.2d at 167.

In *Diebold v. Civil Service Commission of St. Louis County*, 611 F.2d 697 (8th Cir. 1979), a public employee was dismissed from his job following an arrest for a criminal offense. He was required to defend two related cases simultaneously, one criminal and the other administrative. In deciding that the employee's fifth amendment rights were not infringed as a result of the necessity of having to defend in the two parallel proceedings, the Eighth Circuit Court of Appeals stated that "... as long as an employee such as Diebold is not faced with the decision to surrender either his job or his constitutional privilege against self-incrimination, his predicament, no matter how undesirable, does not raise constitutional questions. (citations omitted) ... There exists no requirement that [the employee]

---

**10.** In seeking a continuance, the plaintiff-appellee in the *Hoover* case "filed a complaint in which it was alleged that the failure of the hearing examiner to postpone her administrative hearing amounted to an unconstitutional burden upon her right to be free from compelled self-incrimination. The district court

agreed, and entered summary judgment for the appellee, holding that the failure of the hearing examiner to postpone the administrative hearing 'smacked of an invalid attempt to penalize the exercise of the fifth amendment privilege.' " *Hoover*, p. 580. The Court of Appeals disagreed and reversed the district court.

waive his immunity under the fifth amendment. Nor is there a threat that he will be fired simply for invoking the privilege." (citations omitted). 611 F.2d at 700–1. In accord, *Arthurs v. Stern*, 560 F.2d 477 (1st Cir. 1977), cert. den., 434 U.S. 1034, 98 S.Ct. 768, 54 L.Ed.2d 782 (1978); *DeVita v. Sills*, 422 F.2d 1172 (3rd Cir. 1970).

Many cases have held that parallel criminal and civil trials or investigations do not raise questions of constitutional magnitude with respect to the privilege against self-incrimination. In *United States v. White*, 589 F.2d 1283 (5th Cir. 1979), a defendant in criminal proceeding contended that being forced to defend in a civil case while criminal charges arising out of the same conduct were pending forced him to choose between preserving his fifth amendment privilege and losing the civil suit. The Court of Appeals stated that "He was not forced to surrender his privilege against self-incrimination in order to prevent a judgment against him; although he may have been denied his most·effective defense by remaining silent, there is no indication that invocation of the fifth amendment would have necessarily resulted in an adverse judgment." 589 F.2d at 1286. See also, *S. E. C. v. Dresser Industries, Inc.*, 628 F.2d 1368 (D.C.Cir.1980) (en banc), cert. den. 449 U.S. 993, 101 S.Ct. 529, 66 L.Ed.2d 289 (1980).

In *United States v. Kordel*, 397 U.S. 1, 90 S.Ct. 763, 25 L.Ed.2d 1 (1970) parallel civil and criminal suits were brought against various individual and corporate defendants, alleging violations of the Food, Drug & Cosmetic Act. In discussing these parallel civil and criminal proceedings, brought by the same agency, the Supreme Court stated that, "It would stultify enforcement of federal law to require a governmental agency such as the F. D. A. invariably to choose either to forego recommendation of a criminal prosecution once it seeks civil relief, or to defer civil proceedings pending the ultimate outcome of a criminal trial.

"We do not deal here with a case where the government has brought a civil action solely to obtain evidence for its criminal prosecution or has failed to advise the defendant in its civil proceeding that it contemplates his criminal prosecution; nor with a case where the defendant is without counsel or reasonably fears prejudice from adverse pretrial publicity or other unfair injury: . . ." (citation omitted). 397 U.S. at 11–12, 90 S.Ct. at 769–770. *Hoover*, pp. 581–82.

▮ It is well settled that a court is not constitutionally required to postpone a probation revocation hearing pending conclusion of a criminal proceeding which has been brought or which may be brought in the future arising out of the same act that constitutes a probation violation. *Ryan v. Montana*, 580 F.2d 988 (9 Cir. 1978); *Flint v. Mullen*, 499 F.2d 100 (1 Cir. 1974); *U. S. v. Brugger*, 549 F.2d 2 (7 Cir. 1977); *U. S. v. Rilliet*, 595 F.2d 1138 (9 Cir. 1979); *Melson v. Sard*, 402 F.2d 653 (D.C.Cir.1968). *U. S. v. Markovich*, 348 F.2d 238 (2 Cir. 1965); *U. S. v. Bazzano*, No. 81–1936 (3 Cir. 1982). A majority of the circuits have also held that if the Court proceeds with the probation revocation hearing prior to the criminal proceeding, the defendant has no constitutional right to be granted immunity if he elects to testify at the probation revocation hearing. *Ryan v. Montana*, supra; *Flint v. Mullen*, supra; *U. S. v. Brugger*, supra; *U. S. v. Rilliet*, supra. The District of Columbia Circuit and the Third Circuit have reached a different result and have granted a defendant judicial immunity if he decides to testify at the probation revocation hearing. *Melson v. Sard*, supra; *U. S. v. Bazzano*, supra.[11] In *Hoover v. Knight*, supra, the Fifth Circuit did not find a fifth amendment violation and therefore, did not address the immunity issue. However, the

11. Even the Third Circuit created an exception to the postponement of the probation revocation hearing and the granting of use immunity. See footnote 6 of the *Bazzano* opinion. The

Court finds that the government in the case pending before this Court met the burden which the Third Circuit requires in withholding use immunity from Dozier.

Fifth Circuit Court of Appeals has recently decided two cases wherein the Court held that a district court had no authority to grant judicial immunity to a witness who testified at a criminal trial. *U. S. v. Thevis*, 665 F.2d 616 (5 Cir. 1982); *U. S. v. Herbst*, 641 F.2d 1161 (5 Cir. 1981).[12] This Court concludes that a defendant has no constitutional right to be granted judicial immunity if he chooses to testify at a probation revocation hearing when a criminal charge is pending against him which arises out of the same act as the probation violation. Thus, the Court refuses to follow the decisions rendered in *Bazzano* and *Melson*. Instead, the Court believes the decisions rendered in *Ryan, Flint, Brugger* and *Rilliet* are correct and bases its opinion in this case on these decisions. In *Ryan v. Montana*, supra, the issue before the court was "whether or not a state is required to grant a probationer immunity from use testimony he gives at a combined probation revocation and deferred sentencing hearing at a time when he is under criminal indictment for the same act that constitutes the alleged probation violation." 580 F.2d at 989. The Court found that the state was not constitutionally required to grant a probationer immunity from use of testimony he gave at a probation revocation hearing stating: [13]

██ The probation revocation and sentencing procedures used by Montana do not involve the kind or degree of compulsion which the Court found inherent in the *Cunningham* situation. The *Cunningham* Court confined its holding to situations where "refusal to waive the Fifth Amendment privilege leads automatically and without more to imposition of sanctions."

\* \* \* \* \* \*

As in *Baxter*, Ryan's decision whether or not to testify was a strategic choice. No sanction followed automatically from his exercise of the privilege to remain silent. Rather, the absence of exculpatory information which Ryan might have furnished if he had decided to testify "was only one of a number of factors" which might figure in the probation revocation and sentencing determinations. *See [Lefkowitz v.] Cunningham*, 431 U.S. [801] at 808 n. 5, 97 S.Ct. [2132] at 2138 [53 L.Ed.2d 1]. Indeed, Ryan was under even less disadvantage in deciding to withhold his testimony than was the petitioner in Baxter, since it is not contended that an inference of guilt was or could have been drawn from Ryan's silence at the probation revocation hearing. 580 F.2d at 991.

Although the Court recognized that ". . . there are circumstances, even at criminal trials, when requiring a defendant to make a difficult strategic choice which necessarily results in relinquishing a constitutional right is both legitimate and, from a self-incrimination standpoint, noncompulsive",[14] the Court found that forcing "a defendant to assume the risk that statements he makes at a probation revocation and sentencing hearing will be used against him at a subsequent criminal trial does not appear to be any more harsh than the choice faced in *McGautha [v. California*, 402 U.S. 183, 91 S.Ct. 1454, 28 L.Ed.2d 711], and it does not constitute compulsion in the context of the fifth amendment." 580 F.2d at 993.

---

**12.** See, also: *United States v. Smith*, 436 F.2d 787 (5 Cir.), cert. denied, 402 U.S. 976, 91 S.Ct. 1680, 29 L.Ed.2d 142 (1971); *United States v. D'Apice*, 664 F.2d 75 (5 Cir. 1981).

**13.** The Ninth Circuit also found that the State of Montana did not misuse the probation revocation process, stating:

The State of Montana did not institute probation revocation proceedings for the purpose of eliciting testimony. In this respect, too, Ryan's case is distinguishable from *Cunningham*, where the clear purpose of the New York statute was to force a political party official to make self-incriminating statements. There is no indication that Montana initiated the proceeding without adequate evidence to support the probation violation charge, or that the proceedings were otherwise a cover for an investigation directed solely toward obtaining information to be used in a subsequent criminal trial. Such a misuse of the probation revocation process would be impermissible under *United States v. Consuelo-Gonzalez*, 521 F.2d 259 (9th Cir. 1975) . . .
580 F.2d at 991.

**14.** 580 F.2d at 992.

A similar issue was presented to the First Circuit Court of Appeals in *Flint v. Mullen*, supra. In overturning the district court's decision which had concluded that Flint was denied due process because he was not provided with use immunity, the First Circuit held "... that the right not to speak embodied in the Fifth Amendment is not equivalent to a right to volunteer information to the government under a grant of immunity." 499 F.2d at 102. The Court further concluded: [15]

■ Neither *Simmons* [*v. United States*, 390 U.S. 377, 88 S.Ct. 967, 19 L.Ed.2d 1247] nor *Palmigiano* [*v. Baxter*, 487 F.2d 1280] is directly applicable to a deferred sentence violation hearing. Unlike the defendant in *Simmons*, petitioner was never faced with a choice between raising one constitutional right and foregoing another. The choice whether or not to exercise one's Fifth Amendment right to remain silent must often be made in a setting where there is a concomitant due process right to be heard. Petitioner's decision was, in effect, the same choice he or any other defendant must make when brought to trial. In *Simmons*, the penalty for remaining silent was waiver of a Fourth Amendment claim; in *Palmigiano* the inmate was specifically advised that his silence would be held against him. Here, however, the government had to prove its case by extrinsic evidence and there is no indication that defendant was penalized for silence except to the degree that anyone who claims the privilege may be said to forego the possibility of persuading a court in his favor.

499 F.2d at 103.

In *U. S. v. Brugger*, supra, the defendant's probation was revoked at a revocation hearing held prior to the trial of a state charge upon which the revocation hearing was based. The defendant contended that his Fifth Amendment rights were violated because "he could not present his side of the story at the revocation hearing as he had a right to do so except at the sacrifice of his Fifth Amendment privileges". 549 F.2d at 4. The Court rejected this contention stating:

Whether or not defendant chose to testify at the hearing, which he did not do, and thereby risk self-incrimination with respect to the subsequent state criminal trial based on the same incidents, was his choice alone to make. The considerations involved may have made it difficult, but the fact that the defendant had the decision to make did not constitute a constitutional violation. *Flint v. Mullen*, 499 F.2d 100 (1st Cir. 1974), cert. denied, 419 U.S. 1026, 95 S.Ct. 505, 42 L.Ed.2d 301 (1974). 549 F.2d at 4.

The Second Circuit Court of Appeals has also held that it is not necessary for a court to stay a probation revocation hearing pending a criminal prosecution. Thus, in *U. S. v. Markovich*, supra, the court held that a "conviction is not a prerequisite" for a probation revocation hearing and the "probation court need not await conclusion of" the criminal prosecution based on probationer's conduct. 348 F.2d at 240.

Furthermore, in *U. S. v. Rilliet*, supra, the Ninth Circuit reaffirmed its earlier holding in *Ryan* concluding:

Rilliet also contends that his Fifth Amendment rights were violated by holding the federal revocation proceeding before his trial on the state charges. He

**15.** The Court in *Flint* made an observation similar to that made by the Ninth Circuit in the Montana case. (See footnote 11):

More importantly, the trilogy of Supreme Court employment cases on which petitioner relies all involved instances where the government was attempting to collect information for the express purpose of supplying evidence in subsequent criminal trials. *Lefkowitz [v. Turley]*, supra [414 U.S. 70] at 81 [94 S.Ct. 316 at 324, 38 L.Ed.2d 274]. Under

these circumstances, the Court recognized that the Fifth Amendment privilege against self-incrimination was directly burdened by any penalty placed upon its exercise. Petitioner's violation hearing, however, was not conducted for the express purpose of gathering evidence for his subsequent criminal trial. On the contrary, its purpose was to give petitioner an opportunity to be heard. 499 F.2d at 104.

asserts that he was forced into an impermissible election to remain silent at the revocation hearing to prevent any statements there from being used against him in the state proceeding or to testify at the revocation hearing with the risk that his statements could later be used against him in the state trial.

■ This contention was squarely rejected in *Ryan v. Montana*, 580 F.2d 988 (9th Cir. 1978), where we held that this election does not constitute deprivation of any constitutional right. See also *Kartman v. Parratt*, 535 F.2d 450, 458 & n.7 (8th Cir. 1976); *United States v. Markovich*, 348 F.2d 238, 240 (2d Cir. 1965). Although *Ryan* involved the timing of a state revocation proceeding and a state criminal proceeding and this case involves the timing of a federal revocation proceeding and a state criminal proceeding, that distinction does not require a different result. Both in this case and in *Ryan*, no facts indicated that "refusal to waive the Fifth Amendment privilege [led] automatically and without more to imposition of sanctions." Id. at 991 *quoting from Lefkowitz v. Cunningham*, 431 U.S. 801, 808 n.5, 97 S.Ct. 2132, 53 L.Ed.2d 1 (1977).

595 F.2d at 1140.

■ Based on the above authority, the Court finds that Dozier's motion to stay must be denied. The Court further finds that Dozier's request for judicial immunity must also be denied. Even if the Court is in error regarding the Court's refusal to grant Dozier judicial immunity in this case, the Court believes Dozier has waived his right to seek judicial immunity. The Court further finds that the error, if any, is harmless. Dozier did not testify at the probation revocation hearing. The Court was advised at the beginning that Dozier would not testify on the advice of his attorneys. At no time did Dozier: (1) make a specific proffer as to the nature of his testimony; (2) the Court was never requested to conduct an in-camera hearing related to Dozier's proposed testimony; (3) counsel for Dozier have not made any specific showing of prejudice;[16] and (4) there was no evidence that Dozier had any exculpatory evidence to present other than his good faith belief which was considered and rejected by the Court.[17] The Court fully considered the good faith belief of jury misconduct on the part of Dozier in determining whether he violated his probation. The Court accorded Dozier his right to remain silent and did not infer guilt from his refusal to testify. The Court also found that the government had proven beyond a reasonable doubt that the defendant had violated his probation by engaging in the following criminal acts:[18]

(1) Conspiracy in violation of 18 U.S.C. 371[19]

(2) Obstruction of Justice in violation of 18 U.S.C. 1503

(3) Mail Fraud in violation of 18 U.S.C. 1341

(4) Conspiracy to Commit Burglary in violation of Louisiana law

There simply was no evidence presented of government misconduct or that the government was using the revocation hearing for the express purpose of gathering evidence

---

16. Dozier relied heavily on the defense of good faith at the trial. Numerous tapes were played on which Dozier was one of the speakers. A careful review of Dozier's statements and other actions on the tapes and the other evidence clearly refutes the good faith defense. Even if Dozier would have testified what he did was based on his good faith belief of jury misconduct, such testimony would have been rejected in light of the overwhelming evidence, including Dozier's statement on the tapes, to the contrary.

17. See: *United States v. Herbst*, supra; *United States v. Thevis*.

18. The government is not required to prove a probation violation beyond a reasonable doubt. The Court need only be reasonably satisfied that the probationer has violated his probation. *United States v. Feinberg*, 631 F.2d 388, 391 (5 Cir. 1980); *United States v. Rivera*, 614 F.2d 1049, 1050 (5 Cir. 1980); *United States v. Franchischine*, 512 F.2d 827, 829 (5 Cir. 1975).

19. The specific overt acts proven beyond a reasonable doubt by the government were obstruction of justice (by endeavoring to influence a juror to write a false letter regarding jury misconduct) and mail fraud (by having the letter mailed).

to be used at a future criminal trial or to require Dozier to disclose his defense for any criminal charges the state or federal prosecutor might file against Dozier. The government was fully justified in proceeding with the probation revocation hearing at the earliest possible time because of the motion Dozier filed in his original criminal proceeding based on the very same letter on which the government bases its probation revocation.

Thus, Dozier's motion to stay and in the alternative for judicial immunity is hereby denied.

## II. DEFENDANT'S MOTION TO DISMISS

■ Dozier has also filed a motion to dismiss. Dozier contends that the Court is without jurisdiction to entertain the government's motion to revoke probation for two reasons: (1) the Court specifically ordered that execution of the sentence be suspended pending appeal; and, (2) the Court ordered that the period of probation was to commence only upon Dozier's release from the prison sentences imposed on Counts I and II. These contentions are without merit.

The leading case to be applied by this Court in determining the validity of defendant's motion to dismiss is *U. S. v. Ross*, 503 F.2d 940 (5 Cir. 1974). In *Ross* the probationer had been sentenced by the federal court which suspended execution of the sentence for one week. During this period he was arrested on a state charge. The defendant contended he was not within the probation period as required by 18 U.S.C. 3653. The Court held this argument to be groundless. The Court stated:

Ross contends that Title 18, U.S.C. §§ 3651 and 3653, establishing the guidelines for federal probation and its revocation do not permit a district court to revoke probation when an offense is committed after sentencing but before service of the sentence or probation has begun. The argument has a certain superficial, if semantic, appeal. As Ross observes, Section 3653 sanctions termina-

tion, alteration, or suspension of probation for a violation occurring "at any time within the probation period". The appellant would have us read this provision as exclusive; only if an individual is "on probation" may probation be revoked. Otherwise, he asserts, there are no conditions of probation which a potential probationer could violate and hence he would have no notice as to a course of conduct by which he could avoid revocation.

Aside from the fact that Section 3653 is not by its terms exclusive, case law and sound policy reject Ross's contentions. The standard of appellate review in probation cases is a strict one; only if the district court has abused its discretion will its determination to revoke probation be upset. *United States v. Clanton*, 5 Cir. 1969, 419 F.2d 1304, 1305–1306. There was clearly no abuse of discretion here. As long ago as 1940, this Court observed, in dictum, that a district court had acted properly in revoking the probation of a prisoner who was discovered to be in possession of narcotics while awaiting transportation to prison. *Cline v. United States*, 5 Cir. 1940, 116 F.2d 275, 276 (per curiam) (dictum).

At least two other Courts of Appeals have also recorded their rejections of the appellant's position: *United States ex rel. Sole v. Rundle*, 3 Cir. 1971, 435 F.2d 721; *Longknife v. United States*, 9 Cir. 1967, 381 F.2d 17.

\* \* \* \* \* \*

Since the defendant here was arrested on state charges the day of sentencing, the court can hardly be thought to have abused its discretion in revoking probation once Ross had pleaded guilty to those charges. Only a narrow and proscriptive reading of Sections 3651 and 3653 could yield the contrary result urged by the appellant. We do not so read these provisions.

Sound policy requires that courts should be able to revoke probation for a defendant's offense committed before the sentence commences; an immediate return to criminal activity is more repre-

hensible than one which occurs at a later date.

503 F.2d at 942, 943.

Following the Ross decision, the Fifth Circuit decided *United States v. Tucker*, 524 F.2d 77 (5 Cir. 1975), cert. denied, 424 U.S. 966, 96 S.Ct. 1462, 47 L.Ed.2d 733. In *Tucker*, the defendant's sentence was stayed pending appeal. After the defendant's conviction was affirmed and he had surrendered himself to prison authorities, the defendant was cited for probation revocation because of acts committed during the pendency of his appeal. The Court upheld the revocation of probation stating:

> Appellant's contention that his probation could not be revoked before it had commenced is foreclosed by our decision in *United States v. Ross*, 503 F.2d 940 (5 Cir. 1974).

524 F.2d at 78.

In *Tiitsman v. Black*, 536 F.2d 678 (6 Cir. 1976) the Court rejected defendant's argument that his probation revocation was illegal because the defendant had not been advised that he was on probation and the conditions thereof. The court stated:

> Even if appellant were uninformed of his probationary status and the conditions thereof, we find no gross abuse of discretion "reach[ing] constitutional magnitude." The Supreme Court has established that the issue in probation revocation is
>
> "whether the court is satisfied that its action will subserve the ends of justice and the best interests of both the public and the defendant...
>
> "The duty placed upon the probation officer to furnish to each probationer under his supervision 'a written statement of the conditions of probation' ... cannot be deemed to restrict the court's discretion in modifying the terms of probation or in revoking it ...
>
> "The question is simply whether there has been an abuse of discretion and is to be determined in accordance with familiar principles governing the exercise of judicial discretion." *Burns v. United States*, 287 U.S. 216, 221–222, 53 S.Ct.

154, 156, 77 L.Ed. 266, 269–270 (1932). *Davis v. Parker*, 293 F.Supp. 1388 (D.Del. 1968), in sustaining probation revocation against post-conviction challenge, rejected claims similar to appellant's.

> "The contentions of petitioner rest principally upon a misconception of the power of the Court to revoke probation ... Petitioner assumes that the Court may only revoke probation for acts done by petitioner while he was knowingly on probation. But the power to revoke probation is not so circumscribed...
>
> "[P]robation may be revoked for cause if a court is satisfied after a hearing that a defendant's conduct has been such that the ends of justice and the interest of society and the defendant will be served by the revocation. It is not a prerequisite to such a revocation that the conditions of probation be actually operative at the time ... or for a defendant to know that he is on probation. The mere failure of a defendant to receive notice of the actual commencement of probation does not prevent a court from revoking his probation for good cause." 293 F.Supp. at 1391–92.

Courts have often sustained the revocation of probation for criminal activity committed prior to defendants going on probation even though the defendant, not yet being on probation, could not technically violate a condition of probation. See, e.g., *United States v. Ross*, 503 F.2d 940 (5th Cir. 1974); *Wright v. United States*, 315 A.2d 839 (D.C.App.1974); *Martin v. State*, 243 So.2d 189 (Fla.App.), cert. denied, 247 So.2d 63 (Fla.1971). Similarly, had appellant engaged in criminal activity prior to February 8, 1973 which of course would not technically constitute a violation of a condition of probation (appellant not yet being placed on probation), and had the state court granted probation on February 8, 1973, unaware of the prior criminal activity, the subsequent revocation of probation for criminal misconduct predating probation would clearly have been constitutional. See *United States ex rel. Sole v. Rundle*, 435 F.2d 721 (3rd Cir. 1971).

536 F.2d at 681, 682.

·In *United States v. Dane*, 570 F.2d 840 (9 Cir. 1977), cert. denied, 436 U.S. 959, 98 S.Ct. 3075, 57 L.Ed.2d 1124, the court held that courts "have sustained the revocation of probation for criminal activity committed prior to the effective date of the conditions, . . ., or where the defendant was not aware of the conditions. . ." 570 F.2d at 843–44. The court held that "In such a case, knowledge of the criminal law is imputed to the probationer, as in an understanding that violation of the law will lead to the revocation of probation." 570 F.2d at 844. A similar holding was made by the Seventh Circuit in *United States v. Torrez-Flores*, 624 F.2d 776 (7 Cir. 1980). The Seventh Circuit held:

> We have seen no authority that supports defendant's contention that revocation for conduct occurring prior to the probationary period is forbidden. In fact, the cases that we have seen are to the contrary. *United States v. Dane*, 570 F.2d 840 (9th Cir. 1977), cert. denied, 436 U.S. 959, 98 S.Ct. 3075, 57 L.Ed.2d 1124 (1978); *United States v. Ross*, 503 F.2d 940 (5th Cir. 1974); *United States ex rel. Sole v. Rundle*, 435 F.2d 721 (3rd Cir. 1971); *Trueblood Longknife v. United States*, 381 F.2d 17 (9th Cir. 1967), cert. denied, 390 U.S. 926, 88 S.Ct. 859, 19 L.Ed.2d 987 (1968). The language of section 3651, 18 U.S.C. § 3651, in no way suggests that only future conduct is to be considered. The Supreme Court has stated that the scope of discretion conferred for the purpose of granting probation is not narrowed in providing for revocation. *Burns v. United States*, 287 U.S. 216, 53 S.Ct. 154, 77 L.Ed. 266 (1932). It would have been within the court's discretion to deny probation at the outset on the basis of either or both the prior record or the misrepresentation.
>
> 624 F.2d at 784.

See also *United States v. Jurgens*, 626 F.2d 142 (9 Cir. 1980).

20. See Rule 1101(d), (e) of the Federal Rules of Evidence.

The Court also finds that the allegations set forth in the government's complaint were sufficient. *Kartman v. Parratt*, 397 F.Supp. 531, affirmed, 535 F.2d 450 (8 Cir. 1976).

Based on the above authorities, the Court finds that it did have jurisdiction over the government's motion to revoke Dozier's probation. Accordingly, Dozier's motion to dismiss is denied.

## III. THE PROBATION REVOCATION HEARING

The Court held a probation revocation hearing in accordance with the standards set forth in Rule 32.1 of the Federal Rules of Criminal Procedure and *Morrissey v. Brewer*, supra, and *Gagnon v. Scarpelli*, supra. Prior to the hearing Dozier was given written notice of the alleged violation of probation and a disclosure of the evidence against him. Although not applicable to probation revocation hearings, the government disclosed evidence to the defendant in accordance with the Court's uniform discovery order in criminal cases, Rule 16 of the Federal Rules of Criminal Procedure, 18 U.S.C. § 3500, *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). During the hearing at which Dozier appeared and was represented by counsel, Dozier was afforded an opportunity to, and did in fact, question the government witnesses and presented evidence in his own behalf.

■ The hearing required by Rule 32.1 is not a formal trial. It is clear that the Federal Rules of Evidence are not applicable to a probation revocation hearing.[20] Although the burden of proof is on the government to prove that the defendant violated the conditions of probation, evidence that would establish guilt beyond a reasonable doubt is not required to support an order revoking probation. *United States v. Francischine*, supra.[21]

21. See footnote 18.

■ At the conclusion of the hearing, the Court, for oral reasons assigned, found that Dozier had violated the terms of his probation by engaging in several criminal acts.[22] It is clear that the government proved beyond a reasonable doubt that Dozier, acting in concert with Huey Martin, engaged in acts which were designed to influence a petit juror in the discharge of her duties as a juror. Such corrupt acts were committed to influence, obstruct or impede the administration of justice. It was not necessary that the defendant was actually successful in his attempt to obstruct justice. It is sufficient if the defendant endeavors to influence, obstruct or impede the due administration of justice. *United States v. Russell,* 255 U.S. 138, 41 S.Ct. 260, 65 L.Ed. 553 (1921); *United States v. Griffin,* 589 F.2d 200 (5 Cir. 1979); *United States v. Jackson,* 607 F.2d 1219 (5 Cir. 1979); *Osborn v. United States,* 385 U.S. 323, 87 S.Ct. 429, 17 L.Ed.2d 394 (1966).

■ The act committed by Dozier in this case was a knowing, wrongful, intentional and criminal act to get a juror to send a letter to the Court setting forth alleged acts which were clearly false. If there is any doubt on the part of anyone in determining the intent of Dozier in this case, a review of the tapes dispels any such doubt. A careful review of the tapes, including an analysis of the words spoken, the manner in which Dozier spoke, the actions revealed on the tape, such as whispers, writing on tablets and driving in cars, clearly shows that Dozier had the requisite criminal intent which was more than sufficient to support a decision to revoke his probation. There was no doubt that Dozier actively participated in the plan to get Mrs. Sanders to write a letter alleging jury misconduct. This planning began in November or December of 1981 when Dozier and Martin entered into discussions to influence one or more jurors who served on the jury which convicted Dozier. Large sums of money were paid by Dozier in an attempt to influence the juror. Most of this money went to Martin and George Davis, who acted as an informer for the Federal Bureau of Investigation. It is clear that Dozier wanted the juror to write a letter to the Court at any costs. The sums of money promised by Dozier to Martin and Davis for their work in fixing the jury are substantial. The tapes, photographs and other exhibits introduced into evidence leave little doubt that Dozier was an active participant in these criminal acts. Not only did Dozier have many discussions with Martin regarding the manner and method of obtaining the false letter from a juror, but Dozier also supplied Martin with a list of the jurors who served on the jury, including an alternate juror. Dozier left the name of one juror off the list because he apparently had already begun to work on that juror. Money was paid to Martin under the guise of royalty payments. Additional money and jobs were promised to Martin in the future. Dozier questioned Martin closely regarding the efforts that were being made to obtain the letter from Mrs. Sanders as well as a letter from a "back-up" juror. Dozier contends he acted in a good faith belief that there was improper conduct by the jury which convicted him.[23] Even if he had such a good faith belief, this good faith belief turned to criminal actions. Even assuming a good faith belief by Dozier to obtain the letter, the Court must note that after the letter was mailed to the Court, Dozier instructed Martin in one of the tape recordings to have Mrs. Sanders testify to the Court that she mailed the letters even though she didn't do so. Dozier also instructed Martin to make sure Mrs. Sanders stuck to the story set

---

**22.** The Court adopts as part of this written opinion the oral reasons which were assigned by the Court at the conclusion of the probation revocation hearing in support of the Court's decision to revoke Dozier's probation.

**23.** During the hearing and in closing arguments, counsel for Dozier appeared to be relying on entrapment as a defense. However, Dozier failed to meet the necessary requirements to assert entrapment as a defense. *United States v. Morrow,* 537 F.2d 120 (5 Cir. 1976); *United States v. Ramirez,* 533 F.2d 138 (5 Cir. 1976), cert. denied, 429 U.S. 884, 97 S.Ct. 235, 50 L.Ed.2d 165 (1976); *Sears v. United States,* 343 F.2d 139 (5 Cir. 1965); *Henderson v. United States,* 237 F.2d 169 (5 Cir. 1956).

forth in her letter even though the information was false. Such attempts to encourage and get a witness to lie under oath at a hearing also constitute obstruction of justice.

█ The Court does not believe that Dozier acted in good faith in this case. It is one thing to have a belief that there may have been wrongful conduct on the part of the jury. It is another thing to commit criminal acts in an attempt to set aside a verdict which has been affirmed by the appellate court. It is absolutely clear that Dozier's actions in this case constituted a violation of 18 U.S.C. § 1503. Irrespective of any good faith belief he may have had, Dozier actively participated in a criminal scheme to obstruct justice by having a juror write a false letter alleging juror misconduct which never occurred. The government proved this criminal violation beyond a reasonable doubt. The attempt on the part of Dozier to influence a juror to write a false letter to the Court constitutes a violation of his probation. It is sad—very sad—when a defendant such as Dozier believes that he can buy justice. A defendant's right to trial by a jury which is guaranteed by the constitution does not grant to the defendant the right to pay jurors to change their verdicts at a later date. Such attempts to fix a jury or to illegally get a juror to change his or her verdict shall not be tolerated in the Middle District of Louisiana. Such acts committed by a person on probation shall not be excused or condoned by the Court.

█ It is also clear that the government proved beyond a reasonable doubt that Dozier actively participated in having the letter written by Mrs. Sanders mailed to his attorneys and to this Court. Such actions constitute a violation of 18 U.S.C. § 1341, and also constitute a violation of Dozier's probation.

█ Furthermore, the tapes played at the hearing revealed that Dozier, in his own voice, attempted on at least two occasions to get Martin to break into the office of Ron Menville, a business competitor of Do-

zier. This alleged burglary was to take place in the early morning hours. Such attempts to burglarize another person's office, whether he is a business competitor or not, is a violation of Dozier's probation.

Thus, in summary, the Court finds that the government has proven beyond a reasonable doubt that Dozier violated the terms of his probation by committing the following criminal acts in violation of federal and/or state law:

(1) Conspiracy to obstruct justice and commit mail fraud in violation of 18 U.S.C. § 371;

(2) Obstruction of justice in violation of 18 U.S.C. § 1503;

(3) Mail fraud in violation of 18 U.S.C. § 1341; and

(4) Conspiracy to commit burglary and attempted burglary of Ron Menville's office in violation of Louisiana law.

Each of these violations alone would support the Court's decision to revoke Dozier's probation. Collectively, they demand that Dozier's probation be revoked and that he be sentenced to an additional prison term.

Because of the Court's decision, it was not necessary for the Court to determine whether Dozier was involved in a scheme to have some unknown party killed. The Court has not taken into consideration any evidence presented by the government on this issue in reaching its decision to revoke Dozier's probation.

## IV. CONCLUSION

For reasons set forth above:

IT IS ORDERED that Gilbert L. Dozier's Motion For Stay of Probation Revocation Hearing be and it is hereby DENIED.

IT IS FURTHER ORDERED that Gilbert L. Dozier's Motion to Dismiss be and it is hereby DENIED.

IT IS FURTHER ORDERED that Gilbert L. Dozier's probation be and it is hereby REVOKED.